STANDARD ACCIDENT INS. CO. v. CHERRY.

No. 3886.

Court of Civil Appeals of Texas. Texarkana.

Jan. 2, 1931.

Rehearing Denied March 12, 1931.

King, Mahaffey, Wheeler & Bryson, of Texarkana, for appellant.

Wm. V. Brown and Arnold & Arnold, all of Texarkana, for appellee.

HODGES, J.

The appellee sued the appellant on an accident policy which contained the following provisions:

"Standard Accident Insurance Company of Detroit, Michigan, in consideration of the representations contained in the application, copy of which is indorsed herein and made a part hereof, and of the premium of $29.71, hereby insures Marion E. Cherry, hereinafter called the insured, whose occupation is truck driver—ice delivery, for the term of 12 calendar months from noon, Standard time, of the 29th day of October, 1928, against loss resulting from bodily injury, effective directly, exclusively and independently of all other causes through external violence and accidental means except when intentionally inflicted while sane or insane, or sustained by the insured while insane, subject to all the conditions and limitations hereinafter contained, principal sum $1,000.00; weekly indemnity $15.00.

"If such injuries shall wholly and continuously disable the insured from date of accident, from performing any and every kind of duty pertaining to his occupation, and during the period of such continuous disability, but within 200 weeks from date of such accident, shall result independently and exclusive of all other causes in either one of the losses enumerated below or within 90 days from the date of the accident, irrespective of total disability, result in like manner in any one of such losses, the Company will pay the sum set opposite such loss, and in addition weekly indemnity, as provided in Art. 2, to the date of death, dismemberment, or loss of sight. Only one of the payments named will be made for injury resulting from one accident.

"Weekly Indemnity.

"If such injury shall not result in any of the disabilities enumerated in Art. 1, but shall directly and immediately totally and continuously disable and prevent the insured from attending to any and every kind of duty pertaining to his occupation, the company will pay him the weekly indemnity at the rate mentioned above, ($15.00) for the entire period during which he is so disabled."

After setting out the foregoing provisions of the policy, the plaintiff alleged:

"Plaintiff would show to the court that while in the usual course of his employment as a truck driver delivering ice, on the 10th day of June, 1929, he received an accidental injury to his back, sides, ribs, and muscles, tissues, ligaments, blood vessels and nerves of his back, spine and ribs, which resulted in his total disability to perform the duties of his occupation, and that since receiving his said injury he has been totally and continuously disabled from performing the duties of his occupation, and will continue to be so disabled the balance of his life."

The plaintiff asked for compensation at the rate of $15 per week, together with 12 per cent. as a penalty, and $150 as attorney's fees. The total amount for which recovery was sought is $646.56. Appellant answered,

denying liability under the terms of the policy.

The court submitted the following issues to the jury:

"(1) Do you find from a preponderance of the evidence that the plaintiff received the injuries complained of in the manner and as alleged in his original petition in the cause? Answer: Yes.

"(2) If you have answered the above question 'No', then you need not answer the following question; but if you have answered it 'Yes', then answer the following question: Do you find from a preponderance of the evidence that the plaintiff was directly and immediately totally and continuously disabled and prevented from attending to any and every kind of duty pertaining to his occupation as the result of said injuries, if any? Anwer: Yes."

A third issue was submitted which the jury was not called upon to answer in the event they answered in the affirmative those which have been quoted. Upon those answers the court entered a judgment in favor of the plaintiff.

The first question we shall consider is, Are the pleadings and the evidence sufficient to support a recovery under the terms of the policy? It will be observed that in issuing this policy the appellant has limited its liability to injuries caused by accidental means. There is a well-established distinction between accidental injuries and injuries resulting from accidental means. International Travelers' Ass'n v. Francis (Tex. Sup.) 23 S.W.(2d) 282; Bryant v. Continental Casualty Co., 107 Tex. 582, 182 S. W. 673, 675, L. R. A. 1916E, 945, Ann. Cas. 1918A, 517; United States Mutual Accident Ass'n v. Barry, 131 U. S. 100, 9 S. Ct. 755, 33 L. Ed. 60; Pledger v. Business Men's Accident Ass'n (Tex. Com. App.) 228 S. W. 110, 113.

In the Pledger Case the court said:

"Death caused by accidental means is an accidental death; but an accidental death may or may not be the result of accidental means. Viewing the contract of insurance as a whole, the association's liability in this case was for the accidental death of Pledger."

In the Bryant Case, Chief Justice Phillips, who wrote the opinion, said:

"The word 'means' is employed in the policy in the sense of 'cause'; the phrase 'due to accidental means,' is one of qualification; and the purpose of its use in the ordinary accident policy is to limit the liability of the insurer to injuries effected by an accidental cause, as distinguished from those which are merely accidental in their result. It is generally recognized, as it should be, that where a man undertakes to do a certain thing by a particular means, and the result of his act is such as follows, in not an unusual or unexpected way, from the means voluntarily used,

it cannot be said to be due to an accidental cause, though, in the sense that it was not intended, an accidental result is the consequence. In the numerous adjudicated cases upon the subject, therefore, it is determined that where by the terms of the contract the risk insured against is an injury effected by 'accidental means,' the element of accident must consist in that which produces the injury, rather than in the mere fact that an injury occurs. The rule itself is well established. It is its application to the varying kinds of accidental injuries which is sometimes involved in difficulty, occasioning, in some instances, divergent opinions by the courts."

That brings us to the question, What caused the appellee's injuries? He testified as follows as to his employment and the circumstances under which his injuries occurred:

At the time the policy was issued he was a truck driver engaged in the business of delivering ice at different places in the city of Texarkana. His duty was to carry ice from his truck and put it in the houses or ice boxes of his customers. The usual weight of the ice he had to carry and put into the ice boxes ranged from 50 to 300 pounds. He thus testified as to what he was doing at the time he was injured:

"I was filling his (meaning Mr. Atchison's) ice box with ice, carrying a two-hundred pound chunk of ice; I had it on my back like that; I was bent over and his box struck me right along here (indicating a point about the lower part of shoulder blade). I had to have the ice away up on my shoulder and when I went to tilt over like that I felt it break loose, and I turned around to him and said, 'I hurt myself.' * * * As to how it hurt me, it just caught in my back there. It just seemed like I could feel it tear loose when I threw the ice back. When I felt my back tear loose in there just like—well, I heard it when it popped loose and broke. That was when I put the ice down; when I threw the ice off of my back."

The witness further stated that in unloading the ice he stood it on the edge of the truck and then reached back with his tongs behind his shoulder. After fastening his tongs in the ice, he would pull the ice upon his back and then back up to the ice box and let the ice down into the ice box. The ice he was handling on that occasion was a 200-pound block. In depositing the ice in the box, he had to tilt over forward; the edge of the ice box struck his back at a point near the lower part of the shoulder blade. In unloading the ice from his back, he had to push it up high on his shoulder to get it in the box and then tilt back, and that was when he injured himself. It was nothing unusual for him to carry ice and put it in the ice box in that way. He had for a considerable length

of time been putting it in the same box in the same way.

The question then arises, Do those facts show that the appellee's injury was the unexpected and unintentional result of what he voluntarily did? If it was, then he has shown merely an accidental injury, which is not covered by the terms of his policy. But, if the facts warrant the conclusion that the injury was the unexpected result of an unexpected cause, or of an act, which was unintentionally, unexpectedly, and involuntarily done by him, then it may be said that the injury was the result of accidental means, and within the terms of the policy.

In the Barry Case the injury was caused by Barry's jumping from a platform. Two other companions had immediately preceded him in jumping from the same platform. They alighted safely. Barry voluntarily jumped, but he intended to alight safely; the injury was unexpected. The court held that it was due to accidental means. The ruling was evidently based upon the conclusion that there was some involuntary and unintentional muscular movement on the part of Barry which intervened and caused him to alight in an unexpected way.

In the Bryant Case, Perry, the injured party, died as the result of a sunstroke. The facts showed that Perry voluntarily exposed himself to the heat of the sun, and the intensity of that heat caused the resultant injury. But the court held that the injury was caused by accidental means. Evidently the heat was more intense than Perry expected, or his physical condition was such that he was less able to withstand the heat than he expected to be. In concluding the opinion in that case, Chief Justice Phillips said:

"The proper and true test, in all instances of voluntary action, is that defined in the Barry Case; If in the act which precedes the injury, though an intentional act, something unforeseen, unexpected, and unusual occurs, which produces the injury, it is accidentally caused. If the injury followed in a usual or reasonably to be expected way from the means voluntarily employed, that is, the given voluntary act, it is not a result accidentally effected."

In the Pledger Case Pledger was injured while attempting to lift the end of a bale of cotton. He had been lifting other bales of cotton of similar weight on the same day. He was afflicted with a disease called hardening of the arteries. When he attempted to lift the bale of cotton at the time he was injured, he felt an internal rupture and immediately complained of being sick. He later died as a result of the injury. The policy sued on in that case was interpreted by the Supreme Court to be a contract indemnifying him from an accidental injury. Judge Taylor, who wrote the opinion for the Commission of Appeals, stated:

"Under the rules stated in the Bryant Case, supra, Pledger's death was caused by accidental means. It follows that his death was accidental, and it was so found to be by the Court of Civil Appeals."

According to the testimony of the appellee, he was unloading the ice from his back in the same manner which he had adopted on previous occasions. So far as he knew, there was no voluntary variation in the manner of doing that work from that customarily adopted during the several months he had been delivering ice at that place.

It is a rule in physics that the same causes operating under the same conditions will produce the same results. When results are different, there must be a variation, either in the cause or in the conditions under which the cause operated. In this case the weight of the block of ice was the same; the position of the ice box was the same. So far as the evidence shows, the physical condition of the appellee was the same. There must have been a variance unknown to him in the manner in which he handled himself in bending his body while depositing his burden. If there had not been such a variation, the results would have been precisely the same as on previous occasions. There must have been some involuntary and unintentional movement, unconsciously performed, that intervened and caused the rupture of the ligaments, tissues, or membranes constituting his injury. If that be true, and we are for the moment merely assuming that to be true, then it may be said the injury was the result of accidental means within the terms of the policy.

But in this case the appellee alleged in his petition that he received an "accidental injury." He did not plead that he received an injury by accidental means. As said in the Pledger Case, and other similar cases, an accidental injury may be the result of an injury by accidental means, but an accidental injury is not always the result of an injury caused by accidental means. In submitting the first issue, the court referred the jury to the plaintiff's original petition for the purpose of ascertaining the injuries they must consider. In answering that interrogatory in the affirmative, the jury, in effect, found that the plaintiff received an accidental injury to all those parts of his body mentioned in his original petition.

There is no finding in the record that he sustained an injury caused by accidental means. It seems that no such issue as that covered by the policy was submitted, or its submission requested. Hence there was no basis either in the pleadings of the appellee or in the findings of the jury for holding the appellant liable under the terms of the policy.

Moreover, it was improper for the court to refer the jury to the pleadings in or-

der to ascertain the injuries they were to consider. Farmers' & Mechanics' Nat. Bank v. Marshall (Tex. Civ. App.) 4 S.W.(2d) 165, 166; Hewitt v. Buchanan (Tex. Civ. App.) 4 S.W.(2d) 169, 174; Egan v. Egan (Tex. Civ. App.) 235 S. W. 659; Estep v. Bratton (Tex. Civ. App.) 298 S. W. 145.

The appellee contends that such error was harmless because the evidence conclusively showed that the injuries had been sustained, and the court might have assumed as a matter of law that the appellee was injured within the terms of the policy.

The plaintiff in the case was the only witness who testified concerning his injuries. Those injuries were, according to his testimony, internal, showing no external signs of their existence. The physician who treated him and who testified on the trial did not mention any external evidences of any such injury. He seems to have been governed in his treatment by what the appellee told him. The appellee was deeply interested in the result of the suit. He was later employed in other work that required him to be on his feet much of the time.

The general rule is that the court cannot assume, as a matter of law, that such a witness has told the truth, even though he is not contradicted by other witnesses. Pope v. Beauchamp, 110 Tex. 279, 219 S. W. 447, 450; Lucas & Co. v. Thompson (Tex. Civ. App.) 15 S.W.(2d) 123, and cases there referred to. In the first case cited above, the court, in quoting from a former case (Houston, E. & W. T. Ry. Co. v. Runnels, 92 Tex. 305, 47 S. W. 971), said:

"It is the province of the jury to pass upon the credibility of the witnesses, and they may disregard the testimony of a witness who has neither been impeached nor contradicted, if they believe his statements to be untrue from his manner of testifying, prejudice exhibited towards the opposite party, or his interest in the result of the litigation, or other things indicating that the evidence is not reliable."

The court could not, under the circumstances in this case, assume as a matter of law, from the appellee's testimony alone, that he sustained the injuries detailed by him. The above ruling is not intended to prejudge the facts, and must be regarded as ruling upon the point only that the pleadings do not support a recovery under the policy.

Appellant attacks the second interrogatory as violative of the statute, which requires each issue of fact to be separately submitted. The complaint is that two or more issues of fact were embodied in that interrogatory. That form of submitting such an issue was approved in the following cases: Georgia Casualty Co. v. Gibson (Tex. Civ. App.) 11 S.W.

(2d) 191; Federal Surety Co. v. Smith (Tex. Civ. App.) 25 S.W.(2d) 994. But in each of those cases a writ of error was granted by the Supreme Court where they are still pending.

Since we have determined that this case should be reversed upon other grounds, we shall not express an opinion as to the propriety of submitting an issue in that form. It is probable that the question will be settled by the Supreme Court before another trial of this case.

■ We also think the court should have excluded that portion of the testimony of the appellee wherein he stated what Andrew Rose, the agent who issued the policy sued on, said to him about a settlement with the company.

The judgment will be reversed, and the cause remanded for another trial.