BOYLE *v.* MOSELEY.

MOTOR VEHICLES—GUEST PASSENGER ACT—GROSS NEGLIGENCE—WIL-
FUL MISCONDUCT.

> In action by guest passenger for personal injuries received in
> automobile accident, judgment *non obstante veredicto* for de-
> fendant, on ground that gross negligence or wilful misconduct
> on part of defendant, within meaning of 1 Comp. Laws 1929,
> § 4648, was not shown, is sustained by equally divided court.

Appeal from Delta; Bell (Frank A.), J. Submit-
ted October 13, 1931. (Docket No. 84, Calendar No.
35,834.) Decided April 5, 1932. Rehearing denied
June 6, 1932.

Case by Anne Boyle, guardian of Beatrice Boyle,
against Floyd C. Moseley, for personal injuries re-
ceived by plaintiff's minor ward while a guest pas-
senger in defendant's automobile. Judgment *non
obstante veredicto* for defendant. Plaintiff appeals.
Affirmed, by an equally divided court.

*H. J. Rushton* and *Denis McGinn,* for plaintiff.

*John J. O'Hara* (*James E. Coleman,* of counsel),
for defendant.

NORTH, J. (*for reversal*). After verdict for plain-
tiff, the trial judge, on defendant's motion, entered
judgment *non obstante*. The sole question presented
on plaintiff's appeal is whether in so doing error
was committed. Plaintiff's ward, Beatrice Boyle,
hereinafter called the plaintiff, was injured while
riding as a guest in the automobile driven by de-
fendant. If there was testimony tending to support
plaintiff's claim that defendant was guilty of gross
negligence or of wanton or wilful misconduct, which

(347)

caused her injury, entry of judgment *non obstante* was erroneous. In passing upon the question presented, the testimony must be considered most favorable to plaintiff. Thus viewed, the testimony shows that, about nine o'clock in the evening of October 30, 1929, defendant was driving a Chevrolet coach in a southerly direction on U. S. 2. A young lady occupied the front seat with defendant, while plaintiff and another young man companion were in the rear seat. Defendant met a car ''that had very blinding lights,'' so blinding, he testified, that ''I couldn't see where I was driving after I got up close to the car.'' As these automobiles approached each other they were going 35 to 45 miles per hour. Defendant testified ''I was driving about 45 miles an hour; I was in a hurry to get to the party.'' After defendant got within 40 feet of the approaching vehicle he could not see where he was going. He testified the glare of the lights of the passing car was about the worst he had ever seen, and another witness who was passed by the same vehicle testified that on account of the glare he stopped at the side of the road, and that he was blinded by the passing lights for 60 seconds. As the approaching car neared defendant, it swerved somewhat in his direction, and he thereupon turned his car to the right so that its right-hand wheels left the pavement and were running in the gravel; and he testified that he was afraid at that time to apply his brakes for fear he would go into the ditch, obviously because of the rate of speed at which he was then driving. He had four-wheel brakes, and could have stopped the car had he applied them. He had seen the other car approaching when it was nearly a half a mile away, and noticed it had bright lights, but he continued his speed at the rate of 35 or 40 miles per hour until the approaching lights became so bright that defendant could not see the side of the road. He testified, ''I

had my foot on the brakes all during that time; and after he got past there were a few seconds that I was blinded by the lights, and it was during that time that I hit the post and turned over." The post referred to was a mail box standard erected in the highway. There is testimony that plaintiff's car ran 120 feet after passing the other car before striking this post; that it then went into the ditch, overturned, and injured plaintiff, that defendant did not "slacken (his speed) at all," that his car left the surface of the road and swayed back and forth several times. Further, that as defendant approached the point of accident, he was driving with one hand, and that his right hand rested on his companion's knee. In the light of the foregoing and from other like testimony in the record, we think it cannot be said, as a matter of law, that there was no proof of gross negligence or of wanton or wilful misconduct sufficient to sustain recovery by plaintiff under the so-called guest act (1 Comp. Laws 1929, § 4648). The terms gross negligence and wilful and wanton misconduct have no different meaning than that ascribed to them prior to the enactment of the above-cited statute. In *Gibbard* v. *Cursan,* 225 Mich. 311, Mr. Justice CLARK, speaking for the court, said:

"If one wilfully injures another, or *if his conduct in doing the injury is so wanton or reckless that it amounts to the same thing,* he is guilty of more than negligence. The act is characterized by wilfulness, rather than by inadvertence, it transcends negligence—is different in kind."

Defendant's claim that his failure to apply his brakes or in any way slacken the speed of his car was due to his fear that in so doing he might cause his automobile to leave the road and go into the ditch, may or may not have been believed by the jury. Surely if it was not believed, it could hardly be questioned that defendant's failure to in any

manner slacken the speed of his car was negligence of the grossest sort, and constituted wilful and wanton misconduct on his part. The law imputes intention to do harm where there is a reckless disregard for the safety of others. See note 69 L. R. A. 516. For cases arising out of somewhat similar circumstances and involving the question of gross negligence and wilful misconduct, see *Rog* v. *Eltis,* 269 Mass. 466 (169 N. E. 413); *Blood* v. *Adams,* 269 Mass. 480 (169 N. E. 412); *Kirby* v. *Keating,* 271 Mass. 390 (171 N. E. 671).

Appellee urges that the swerving of the approaching car in his direction when about 40 feet away resulted in its lights becoming more blinding to him, and thereby he was confronted with a sudden and unexpected danger, and that, therefore, his subsequent acts cannot be held to constitute gross negligence or wilful and wanton misconduct. This would depend upon whether the jury believed defendant's testimony as to the lights becoming suddenly more blinding, and also upon whether defendant's perilous position was produced by his own negligence. *Walker* v. *Rebeuhr,* 255 Mich. 204. An issue of fact still remained.

If responsibility cannot attach for so-called gross negligence except the one charged is guilty of wilful misconduct, then the judgment entered in the circuit court must be affirmed; but it is submitted that such is not the law. In the opinion of Mr. Justice FEAD in *Finkler* v. *Zimmer, ante,* 336, it is emphasized that:

"It (gross negligence) must be characterized by wantonness at least. But I wish to avoid concurring in the view that, to be liable, a defendant must have had the intention to hurt someone and that liability cannot be predicated on a negligent act which is wantonly reckless rather than malicious."

Clearly there is some testimony in this record of defendant's being "wantonly reckless" in his disregard of the safety of plaintiff and the other occupants of his automobile. The jury passed upon the sufficiency of this testimony. A very recent and well-considered case, so similar in facts and questions involved that it cannot be distinguished, is reported in *Siesseger* v. *Puth,* 213 Iowa, 164 (239 N. W. 46). The Iowa guest statute permits recovery if the damage to the guest is caused by the "reckless operation" of the motor vehicle; and it was, there held to have been a question of fact. In another Iowa case decided a few days after the *Siesseger Case,* it is said:

"This action is founded upon recklessness, which means more than negligence. It means proceeding without heed of, or concern for, consequences. See *Siesseger* v. *Puth,* 213 Iowa, 164 (239 N. W. 46). In order for conduct to be reckless within the meaning of the law, it must be such as to manifest a heedless disregard for or indifference to the rights of others." *Neessen* v. *Armstrong,* 213 Iowa, 378 (239 N. W. 56).

We think the circuit judge was in error in holding that there was no testimony supporting the verdict of the jury finding defendant guilty of gross negligence or wilful and wanton misconduct and in entering judgment for defendant *non obstante veredicto.* The judgment thus entered should be set aside, and the case remanded, with direction to enter judgment on the verdict as rendered. Appellant should have costs.

McDONALD, POTTER. and WIEST, JJ., concurred with NORTH, J.

CLARK, C. J. (*for affirmance*). I am not in accord with opinion of Mr. Justice NORTH. The decision of the trial judge granting defendant's motion for

judgment *non obstante* correctly disposes of the case:

"The accident happened upon a busy paved highway, about nine o'clock in the evening, between Gladstone and Escanaba. Four young people were on their way to a dance and were in a hurry. One girl sat in the front seat with the defendant. The injured girl and a young man sat in the rear seat. The automobile was a coach, new, and in good order. They were driving at a speed of 35 to 40 miles per hour. No one objected to the speed. They met many cars. There is no evidence that they passed any cars going in the direction in which they were traveling. It is not disputed that the driver was keeping a proper lookout ahead, and it appears that he and other occupants of the car saw approaching, and some distance away, a car with a very bright headlight, so bright that, as it came close, the injured girl pulled her coat collar up around her head because of the glare. The driver testified that he could see the edge of the road until, suddenly, when the other car was near him, it seemed to swerve in his direction, and he was blinded momentarily, and that to avoid a collision he immediately swung to the right far enough to put his right wheels on the shoulder of the road. The injured girl confirms the swing to the right and no one disputes the sudden momentary blinding of the entire party. The auto traveled a short distance, variously estimated at from 50 to 120 feet, when it struck a mail box post, which ditched the auto and caused it to overturn and injure the girl.

"The girl testified that the defendant drove all the way with only one hand on the wheel, and with the other hand on the knee of the girl who sat with him. Defendant positively denies this. Her evidence loses its force entirely as applied to the time of the accident, when we consider that the young woman was sitting all the while in the back seat of the automobile, and that, when the bright lights

struck the auto, she put her coat collar over her head. Taken all together there is possibly some evidence which might sustain a verdict based upon ordinary negligence. Even this is doubtful. The auto was new and in good order, the lights were properly used, the defendant was a driver of 10 years' experience, and the road was paved. In the light of present day practices, considering the time, the place, and the conditions, the speed was not excessive. The emergency was one that arises suddenly and is a common and frequent hazard of night driving. Whether to stop or keep going for safety was a matter for instant judgment and decision. There is nothing in the evidence that tends to show that the defendant failed to do anything that a reasonably careful and prudent man might have done, or that he did anything that such a man might not have done. But Act No. 19, Pub. Acts 1929 (1 Comp. Laws 1929, § 4648), was then in force. It was necessary for the plaintiff to show facts from which a jury would be warranted in finding, either from the direct evidence or from fair inferences therefrom, that at the time the injuries were sustained, the injured person was not only a passenger in the automobile but that her injuries were occasioned by the gross negligence or wilful and wanton misconduct of the defendant. One who rides as a guest in an automobile, since the act of 1929 became effective, assumes the risk of all ordinary hazards and negligence. If, when so riding, he is injured, it is only when the injuries are occasioned by the gross negligence or wilful and wanton misconduct of the driver, that he can recover damages from his host.

"I cannot see that the evidence here shows any gross negligence or wilful and wanton misconduct, as these terms have been repeatedly defined by our Supreme Court."

Judgment is affirmed.

Sharpe, Fead, and Butzel, JJ., concurred with Clark, C. J.