### HERRELL v HICKOK et

Ohio Appeals, 6th Dist, Lucas Co

Decided June 7, 1937

Yager, Bebout & Stecher, Toledo, for appellant.

Marshall, Melhorn, Davies, Wall & Bloch, Toledo, and W. A. Belt, Jr., Toledo, for appellees.

### OPINION

By LLOYD, J.

Helen Herrell, plaintiff in the Court of Common Pleas, appeals to this court on

questions of law from a judgment in favor of The Yorkshire Indemnity Company of New York entered on the sustaining of its general demurrer to her second amended supplemental petition, wherein, under the provisions of §9510-4, GC, she seeks to recover a judgment against the indemnity company for an unsatisfied judgment procured by her against Clarence Hickok through whose fault she sustained personal injuries.

The only error assigned is the sustaining of the demurrer and the entry of judgment thereon.

In her second amended supplemental petition, the appellant alleges that on May 15, 1932, she received bodily injuries while riding as a guest passenger in the state of Michigan in an automobile owned and operated at the time by Clarence Hickok, and that subsequent thereto, she filed her petition in the Court of Common Pleas to recover damages for said bodily injuries; that on May 15, 1932, there was in force and effect in Michigan §4648, Compiled Laws of Michigan, wherein it was provided that no person transported by the owner or operator of a motor vehicle as a guest without payment for such transportation should have a cause of action for damages against such owner or operator for injury, death or loss in case of accident, unless such accident shall have been caused by gross negligence or wilful and wanton misconduct of the owner or operator of such motor vehicle and unless such gross negligence or wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought; that in the trial of the action appellant's cause of action was submitted to the jury upon the evidence and upon proof of the Michigan statute and the law of that state relating thereto; and that the trial court instructed the jury therein that the liability, if any, of Hickok to appellant for her alleged injuries must be determined under the Michigan statute and that in determining whether he was guilty of wilful and wanton misconduct, the jury must apply the following test:

"Now, the Supreme Court of Michigan has laid down certain decisions in the determination of that question, and therefore I say to you that to determine that question you must find that the following elements existed: First, that the defendant had knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; secondly, that he had ability to avoid resulting harm by ordinary care and diligence in the use of the means at hand; and, third, that he omitted to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another."

The plaintiff further alleges that upon the evidence and under the charge of the court the jury returned a verdict for appellant in the sum of $25,000; and that therewith the jury also answered a special interrogatory propounded by Hickok, as follows:

"Interrogatory: Was the accident in which plaintiff was injured caused by wilful and wanton misconduct on the part of defendant, Clarence Hickok, in the operation of his automobile; if so, state of what that wilful and wanton misconduct consisted."

"Answer: We find the accident was caused by the wilful and wanton misconduct of the defendant which was evidenced by a rate of speed greater than was warranted by the condition of the traffic, by failing to slow down after experiencing trouble at the first curve and entering the second curve at a speed as great or greater than that speed at which the first curve was taken."

It is further alleged that thereafter the motion of Hickok for a new trial was overruled and a judgment entered in favor of appellant for $23,520 with interest and costs; that said judgment is final and more than thirty days have elapsed since the entry thereof; that on May 15, 1932, there was in full force and effect a policy of insurance issued by the indemnity company insuring Hickok against liability for loss or damage on account of bodily injuries, accidentally sustained by any person or persons, resulting from the ownership or operation of the automobile in question within the limits of the continental United States of America or the Dominion of Canada and that by this policy, the indemnity company agreed to defend all claims or suits for bodily injuries covered thereby and to pay all court costs in any such suits and to pay all sums which Hickok became obligated to pay by reason of the liabilities imposed by law for damages because of such bodily injuries not exceeding $20,000 for bodily injuries to one person and $40,000 for bodily injuries to two or more persons, and also to pay all interest

upon the amount of any judgment in any such suit against Hickok. The appellant then alleges compliance by Hickok with the terms and conditions of the policy and that the appellee indemnity company took full and complete charge of the investigation of the accident, and thereafter, with full knowledge of the facts and of the law, and without qualifications or reservations, took full, complete and exclusive charge and control of the defense of said action and did defend and prosecute the action and at the time of the rendition of the judgment in question exclusively controlled and dominated the defense of the action.

Appellant prays for a judgment against The Yorkshire Indemnity Company of New York in the sum of $20,000, with interest and court costs, pursuant to §9510-4, GC.

Counsel for Miss Herrell contend that the foregoing last alleged facts estop the indemnity company from now avoiding its obligation under its policy to satisfy her judgment to the extent of the stipulated amount therein provided; but the facts so alleged evidence no prejudice resulting therefrom to the insured; and it is apparent, especially in view of the following pleaded condition of the policy, that no estoppel thus arises, viz:

"Upon the happening of an accident, any and all acts, proceedings or conduct on the part of this company, or its agents and attorneys, at any and all times thereafter, shall be considered as done for the benefit of all parties concerned, and shall be without prejudice to the rights of either party, and in any action or proceedings brought against this company to enforce any liability hereunder, such acts, proceedings or conduct, shall not be asserted or construed as a waiver of any violations or breach of any warranty, condition, term or provision of this policy, or as an estoppel in pais or otherwise, against this company, or as an admission of liability hereunder and this irrespective of and without regard to the time when the company shall have acquired knowledge or notice of any such violation or breach."

The remaining question is: Does the second amended supplemental petition of Miss Herrell otherwise state a cause of action against the indemnity company? We shall approach a consideration of this question solely on the interpretation placed upon the allegations of the petition in argument and brief of counsel for both Miss Herrell

and the insurance company. They say the gist of the cause of action, stated in the petition, is that Miss Herrell has a judgment against the defendant, Clarence Hickok, for personal injuries sustained by her while a guest in his automobile, caused by his wilful and wanton misconduct, which judgment can not be satisfied by execution issued against him and which therefore, under the conditions of its policy of insurance, The Yorkshire Indemnity Company of New York is bound to pay, and that for the purposes of the demurrer these facts are admitted. The contention of the insurance company is that under the conditions of the policy of insurance issued to Hickok it is not liable thereon to any guest passenger of Hickok for personal injuries sustained by the wilful and wanton misconduct of the insured; that of counsel for Miss Herrell is directly contrary thereto.

Although of no present importance it may not be ill timed to say that the action of Miss Herrell against Hickok has been twice presented to this court on appeal; first from a directed verdict and consequent judgment for Hickok, which was reversed (Herrell v Hickok, 49 Oh Ap 347, 197 NE 241 [18 Abs 17]) and then from the judgment for Herrell which was affirmed and is the subject of the instant appeal. (Hickok v Herrell, 56 Oh Ap 378) [25 Abs 190].

The premise upon which the decision of the question presented depends is the pleaded condition of the policy which, quoted verbatim is as follows:

"This company agrees: To pay on behalf of the assured, subject to the limits of liability stated therein, all sums which the assured shall become obligated to pay by reason of the liability imposed by law for damages because of bodily injuries, including death at any time resulting therefrom, accidentally sustained by any person or persons during the policy period."

Attention is particularly directed to the latter words thereof, "accidentally sustained by any person or persons." As said in Standard Accident Ins. Co. v Cherry, (Tex. Civil App.), 36 SW (2d) 807, at page 809: "There is a well-established distinction between accidental injuries and injuries resulting from accidental means."

In the instant case, even if the policy read for injuries to any person caused by, or resulting from accidental means, it could hardly be reasonably or justly claimed that,

however wilful or wanton his conduct may have been within the purview and legal interpretation of the guest statute, so-called, of Michigan, Hickok either objectively or subjectively willed or intended to cause death to one, and injury to another, of the occupants of his automobile. In this respect the instant case differs essentially from that of **Commonwealth Casualty Co. v Headers, 118 Oh St 429, 161 NE 278.**

That case is referred to in Georgia Casualty Co. v Mills, 156 Miss. 853, 127 So 555, wherein the condition of the insurance policy was substantially like that in the instant case. There it is held that one, assaulted by insured's employee, sustained accidental injury within the meaning of a policy indemnifying his employer against loss from claims for injuries accidentally sustained; and it is there said that:

"There is a diversity of opinion on this question among the courts, but the great weight of authority, and we think the better reasoned cases, holds that injuries sustained by a person while defending himself from an unprovoked assault are within the terms of a policy insuring him against injury accidentally inflicted—that an injury inflicted on one who did not voluntarily enter into the affray in which he was injured is an accident. * * *

"Whether an injury is accidental, is to be determined from the standpoint of the person injured. If the injury comes to him through external force, not of his choice or provocation, then as to him the injury is accidental.

"The only cases referred to, holding to the contrary, are Briggs Hotel Co. v Accident & Liability Insurance Co., Ltd., 213 Ill. App. 334 (Intermediate Appellate Court); and **Commonwealth Casualty Co. v Headers, 118 Oh St 429, 161 NE 278.**"

In an annotation in 73 A.L.R. 414, it is also intimated that the Headers decision is contrary to the weight of authority.

These two cases are also commented on in Robinson v U. S. Fidelity & Guaranty Co., 159 Miss. 14, 131 So 541, decided January 5, 1931.

Again, in Fox Wisconsin Corp. v Century Indemnity Co., 219 Wis. 549, 263 NW 567, the facts were that a patron of a theatre was assaulted by a servant of the owner thereof, to which the indemnity company had issued its policy of insurance indemnifying it "against loss by reason of the liability imposed upon him by law for damages because of bodily injuries * * * accidentally sustained by any person or persons."

Justice Fairchild, writing the opinion of the court, said:

"Whether or not an injury is accidental under the terms used in the policy here involved is to be determined from the standpoint of the person injured. * * * The facts show that the injury to the patron came to him through force not of his own provocation. From his standpoint, then, the injuries were 'accidentally sustained.' * * * In the absence of some provision in the policy which excludes liability for such injuries, the meaning of 'accidentally sustained' becomes plain and controlling. * * * The patron, whose injury gave rise to the liability, was assaulted, and, in a sense, the act was unlawful and intentional; still, considered objectively, it occurred without the agency of the patron, and, so far as these particular parties are concerned, the act may be, and legally is to be, termed accidental."

Although the facts in Messersmith v American Fidelity Co., 232 N. Y. 161, 133 NE 432, 19 A.L.R. 876, differ from those under consideration what Judge Cardozo, in his usual terse and inimitable way, says in his opinion therein, is in principle convincingly persuasive of the justice of the conclusion to which the authorities already cited inevitably lead.

In part he says: "To restrict issuance to cases where liability is incurred without fault of the insured would reduce indemnity to a shadow. Neither in the statute nor in its application as shaped by long-continued practice is there the token of an intention that indemnity shall be withheld from owners operating their own cars, and limited to those whose cars are run by servants. Liability of the owner who is also the operator can never be incurred without fault that is personal. Indeed, the statute has so covered the field that it can seldom, if ever, be incurred without fault that is also crime. * * * In too many ways to be misread, the state, through its legislature, has manifested recognition and approval of the business of insurance against the consequences of negligence, whether personal or vicarious. * * * Insurance instead of prejudicing the victim of an accident is seen to supply in many cases the only fund from which the victim can be paid. * * * Injuries are accidental or the

632

opposite for the purpose of indemnity according to the quality of the results rather than the quality of the causes. * * * Every act, if we exclude, as we must, gestures or movements that are automatic or instinctive, is wilful when viewed in isolation and irrespective of its consequences. An act ex vi termini imports the exercise of volition. * * * Even so, if the untoward consequences are not adverted to—at all events, if the failure to advert to them is not reckless and wanton * * * liability for the consequences may be a liability for negligence. * * * A driver turns for a moment to the wrong side of the road, in the belief that the path is clear, and deviation safe. The act of deviation is wilful, but not the collision supervening. The occupant of a dwelling leaves a flower pot upon the window-sill, and the pot, dislodged by wind, falls upon a passing wayfarer. * * * The position of the flower pot is intended but not the ensuing impact. The character of the liability is not to be determined by analyzing the constituent acts which, in combination, make up the transaction, and viewing them distributively. It is determined by the quality and purpose of the transaction as a whole."

In an annotation to the Messersmith case in 19 A.L.R. 879, among other cases cited is Timline v White Cross Ins. Assn., 3 K. B. (Eng.) 327, which is of like import.

So, in the instant case, Hickok, with full knowledge of the facts and circumstances as found by the jury in its answer to the special interrogatory, intended the reckless speed at which he was proceeding, but did not intend the ensuing result.

What has been said foreshadows the answer to the instant question, which is, that the judgment of the Court of Common Pleas should and must be reversed and the cause remanded thereto with directions to overrule the demurrer and for further proceedings according to law.

Judgment reversed and cause remanded.

CARPENTER and OVERMYER, JJ, concur.