FORSLING, Respondent, v. MICKELSON, Appellant

(283 N. W. 169.)

( File No. 8154.   Opinion filed December 30, 1938.)

*Bailey, Voorhees, Woods & Bottum,* of Sioux Falls, for Appellant.

*Harold Bogue,* of Canton, and *Danforth & Davenport,* of Sioux Falls, for Plaintiff and Respondent.

POLLEY, J.   Action to recover damages for injuries resulting from an automobile wreck.

The evidence shows substantially the following facts:   For several years prior to 1936, the business men of the city of Canton had made a practice of annually holding what was known as a "Corn Carnival," composed of such various games and amusements as generally accompany a street carnival; the purpose being to assemble as large a crowd in the city as possible in order to promote the good will of the people in the surrounding territory and thereby increase trade and business in the city.   The business men of the city had charge and management of all preparations for the carnival.   One feature of the publicity and advertising was to make what they called booster trips out through the surrounding territory.   These trips were made in automobiles.   The use of the automobiles for this purpose was donated by the various business men; and their itineraries were directed by an advertising committee of business men of the city.   A number of automobiles traveled together and were called a caravan.   A band in the city, known as the "Community Band," accompanied the caravan to furnish music, and the plan of the caravan was to travel from one town to another.   When the caravan reached a town it would stop, the band would play a musical selection, some person in the caravan would announce the corn carnival through a megaphone, hand bills would be scattered through the crowd, the band would play another selection, and the caravan would move along to the next town.   Plaintiff, who lived on a farm some seven miles from town, was a member of the band.   The band as an organization received twenty-five dollars per month which was used to defray the incidental expenses of the organization, but the members of the band themselves received no pay for their services.   Plaintiff was notified by the secretary of the band to be on hand to go with the caravan on the night of the accident, August 14, 1936, and he reported for duty at the appointed time and place.

Defendant's father was the owner of, and operated, a creamery in Canton, and defendant was employed as a butter maker in said creamery.   Indirectly, both were prospective beneficiaries of the carnival.   Defendant was the owner of an automobile and tendered the use of the same to the advertising committee to use in the caravan on that evening.   The offer was accepted, and his

car, together with five other cars, six in all, made up the caravan. Plaintiff was directed by a member of this committee to get into defendant's car, which he did. Defendant drove the car. His father rode with him in the front seat, and plaintiff, with two other members of the band, rode in the rear seat.

The caravan visited some four or five towns, the last of which was Hurley. After the usual announcements had been made at that place and the band had finished playing, the caravan started south on Highway No. 19. It was about dark, and the drivers turned on their headlights just as they left Hurley. The next objective was Viborg, situated on Highway No. 19, some ten miles south of Hurley. The road between the two towns is what is generally spoken of as "black top," or tarvia, and appears from the testimony and photographs in the record, to have been in perfect condition. The paving on the roadway was 19 feet in width, with a shoulder three feet wide on either side of the black top. This furnished a width of 25 feet on which cars could safely travel.

At a point about two miles north of Viborg, the road crosses a small creek on a concrete bridge. The floor of the bridge is on a level with the surface of the paving on either side of the bridge, but the bridge itself is only 18 feet wide, the effect of which is to narrow the road from 25 feet on either side of the bridge to 18 feet where it passes over the creek. At either end of the bridge was a concrete abutment, some two feet or more in height. Defendant's car was so far on the west side of the road that when he was about to drive upon the bridge the car struck the west abutment. The result was that the abutment was knocked down, the car was wrecked, defendant's father was fatally injured, and all the other occupants of the car, including plaintiff, were more or less seriously injured.

This action was brought by plaintiff to recover damages for the injuries he suffered in the wreck.

The case was tried to a jury. At the close of plaintiff's testimony, and again at the close of all the testimony, defendant moved for a directed verdict. These motions were denied by the court, and the case was submitted to the jury. A verdict in a substantial amount was returned. Defendant then moved for judgment notwithstanding the verdict. This motion was denied, judgment was entered on the verdict, and defendant appeals.

Appellant urges three grounds for a reversal of the judgment; First, that there is no evidence of negligence on the part of the appellant; Second, that if the defendant was guilty of negligence, plaintiff was guilty of contributory negligence in failing to discover the danger and warn the driver in time so he could avoid striking the abutment with the car; and, Third, that the evidence shows that the plaintiff was riding with defendant as a guest under the provisions of Chapter 147, Laws of 1933, and in the absence of evidence showing that defendant was guilty of wilful and wanton misconduct that contributed to the injury, he was not entitled to recover.

Upon the question of negligence, the evidence is very simple. Defendant's car was number five from the head of the caravan. The testimony of various witnesses fix the speed at which the caravan was moving at from 30 to 45 miles per hour. There is some evidence to the effect that after the wreck a tire track was seen on the right shoulder of the road for a distance of about 100 feet north from the bridge but the evidence does not show that this track was made by one of defendant's tires. There is also some testimony to the effect that the guard rail posts along the right side of the road just to the north of the bridge showed "nicks" about the height of a hub cap. There is no evidence, however, that these nicks were made by defendant's car. There is some testimony to the effect that the driver of a Chevrolet car, that did not belong with the caravan, was attempting to pass the caravan. This car passed the rear car in the caravan, then passed defendant's car. It passed the car next ahead of defendant's car, then forged ahead, until it was abreast of the second car ahead of defendant's car, then it slowed down and dropped back to the rear of the car next ahead of defendant, and as it crossed the bridge, it was twenty-five to fifty feet ahead of defendant's car, but was still on the left side of the center of the pavement. This afforded defendant a clear view of the abutment on the righthand side of the road, and had he been exercising ordinary care in keeping a look out ahead of his car, he would have seen the abutment in time to have avoided hitting it with his car. The evidence shows that at a short distance north of the bridge, defendant was driving with the right wheels of his car out on the right shoulder of the road. No reason is shown why he should have had his car wheels off the pavement,

but with no obstruction to obscure his view, no reason is shown why he should not have turned his car onto the pavement before he reached the bridge abutment. "His failure to look and see what was there to be seen was negligence." Lachow v. Kimmich, 263 Mich. 1, 248 N. W. 531, 90 A. L. R. 626. It does not appear from the evidence that the Chevrolet car in any manner contributed to the accident. The only explanation of the accident is that defendant did not see the bridge abutment in time to avoid hitting it.

Certainly there is no evidence that plaintiff knew or had reason to think there was any likelihood that defendant would run the car against the abutment, until it was 'too late to give defendant warning of the danger. There is no evidence of contributory negligence on the part of the plaintiff.

Under proper instructions, the jury was warranted in finding that the accident was the result of careless driving on the part of the defendant.

The third ground urged by appellant, and the only ground that merits serious consideration, is: was plaintiff a "guest without payment for such transportation," as that clause is used in Chapter 147, Laws 1933? This chapter is almost identical with the guest statute of the state of Michigan. Sec. 4648, Comp. Laws of Michigan 1929. This statute has been construed by the Michigan court, before it was adopted in this state, in the following cases: Naudzius v. Lahr, Jan. 1931, 253 Mich. 216, 234 N. W. 581, 74 A. L. R. 1189, 30 N. C. C. A. 179; Oxenger v. Ward, Jan. 1932, 256 Mich. 499, 240 N. W. 55; Van Blaircum v. Campbell, Jan. 1932, 256 Mich. 527, 239 N. W. 865; Finkler v. Zimmer, April 1932, 258 Mich. 336, 241 N. W. 851; Bobich v. Rogers, April 1932, 258 Mich. 343, 241 N. W. 854; Boyle v. Moseley, April 1932, 258 Mich. 347, 241 N. W. 849; Morgan v. Tourangeau, Sept. 1932, 259 Mich. 598, 244 N. W. 173; Willett v. Smith, Sept. 1932, 260 Mich. 101, 244 N. W. 246; Wyma v. Van Anrooy, Oct. 1932, 260 Mich. 295, 244 N. W. 478; Mater v. Becraft, Jan. 1933, 261 Mich. 477, 246 N. W. 191; Grabowski v. Seyler, Jan. 1933. 261 Mich. 473, 246 N. W. 189—and in view of what this court said in Melby v. Anderson, 64 S. D. 249, 266 N. W. 135, we will follow the Michigan court.

In this case the plaintiff was not paying defendant, either in money or other tangible property, for the ride, but the Michigan

court, as well as numerous other courts, holds that this fact alone does not make the plaintiff a guest under the statute. Whether a person is a guest under the statute depends upon who is the beneficiary of the transportation. In McGuire v. Armstrong, 268 Mich. 152, 255 N. W. 745, the defendant was the county nurse. Plaintiff's wife was either a county or township patient and was being taken to a hospital in Grand Rapids for treatment for eye trouble. Neither the patient herself nor her husband was paying for the transportation; but it is not necessary that the person who is being transported must pay for the transportation. Defendant was acting under the directions of the county, and was being paid by the county. The court held that the patient was not a guest within the meaning of the statute; the court saying: "The consideration need not pass from the passenger to the driver. If the driver receives a direct benefit from another, the service is not gratuitous and there is no guest relationship. Mrs. Armstrong admitted that it was her duty as a county nurse to bring patients to various clinics in Grand Rapids. It is reasonable to infer that the transportation of such passengers as the deceased was within the course of defendant's employment. From the testimony, it seems that it was within the scope of the county's duties to provide medical services for the indigent. Transportation was furnished by the county for that purpose and defendant, at the time of the accident, was engaged in the performance of one of the duties for which she was paid."

Chumley v. Anderton, 20 Tenn. App. 621, 103 S. W. 2d 331, is one of the latest cases on this subject, to which our attention has been called. This case is from the Court of Appeals in Tennesee, but the cause of action arose in the state of Michigan. Defendant was a Ford automobile dealer, and plaintiff was buying a Ford car. The particular car plaintiff wanted was a new model that had not yet been distributed over the country, and plaintiff and defendant made a trip to Detroit in an effort to hurry the delivery of the desired car. They went in defendant's car, and wholly at defendant's expense. Because of the negligent driving of defendant, plaintiff was injured and sued for damages. The defense was that plaintiff was riding as a guest and could not recover. The court held that they were engaged in a common purpose in which they were jointly interested, the plaintiff to get the use of the new

car as soon as possible, and the defendant to complete the sale of the car and get his money therefor; and that the plaintiff was not a guest within the meaning of the guest statute. The court, in that opinion, has collected and reviewed apparently all the cases touching upon the guest statute, and a further review of the cases would serve no useful purpose.

In the case at bar, the plaintiff did not solicit a ride. He did not go with defendant merely for the transportation from one place to another, nor at the invitation of defendants to go along for the ride. The purpose of the booster trip was to promote the corn carnival, but plaintiff did not live in Canton, and had no interest in the success of the carnival. He was doing his service as a musician. Defendant's car was offered for his use, and he entered the car as directed by a member of the publicity committee.

From the holdings of the various courts Blashfield has deduced the following rule:

"One important element in determining whether a person is a guest within the meaning and limitations of such statutes is the identity of the person or persons advantaged by the carriage. If, in its direct operation, it confers a benefit only on the person to whom the ride is given, and no benefits, other than such as are incidental to hospitality, companionship, or the like, upon the person extending the invitation, the passenger is a guest within the statutes; but, if his carriage tends to the promotion of mutual interests of both himself and the driver and operates for their common benefit or if it is primarily for the attainment of some objective or purpose of the operator, he is not a guest within the meaning of such enactments. Of course, a passenger for hire is not within their operation, regardless of whether the passenger or some one else pays or promises to pay for the transportation.

"The fact that it is contemplated that some indirect benefit will accrue to the operator of the automobile, to which the carriage will have in some degree contributed collaterally or by way of inducement, is not sufficient to make the carriage one for mutual benefit within the rule as stated." 4 Blashfield Cyclopedia of Automobile Law and Practice, Permanent Edition, Sec. 2292, page 80.

In view of the foregoing authorities and the reasoning in support thereof, we are satisfied that plaintiff was not a guest un-

der the provisions of Chapter 147, Laws of 1933, and that defendant is liable for ordinary negligence. Peronto v. Cootware, 281 Mich. 664, 275 N. W. 724; Cardinal v. Reinecke, 280 Mich. 15, 273 N. W. 330, 274 N. W. 379; McGuire v. Armstrong, supra.

The judgment and order appealed from are affirmed.

WARREN, J., concurs.

ROBERTS, P. J., and SMITH, J., concur in result.

RUDOLPH, J., not sitting.