## NEW AMSTERDAM CASUALTY CO. v. JONES et al.

### No. 9329.

Circuit Court of Appeals, Sixth Circuit.

April 23, 1943.

Stevens T. Mason, of Detroit, Mich. (Mason, Davidson & Mansfield, of Detroit, Mich., on the brief), for appellant.

Robert E. Bratton, of Detroit, Mich. (Bratton & Bratton, and Buell Doelle, all of Detroit, Mich., on the brief), for appellees.

Before SIMONS, HAMILTON, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

The New Amsterdam Casualty Company insured Larry Jones, an oil station proprietor, against liability for bodily injury suffered by any person not employed by him, as the result of any accident on his premises. Jones shot Oscar Martin in some dispute on the station premises, and served a sentence for willful and felonious assault. Thereafter, Martin sued Jones for damages, was awarded a judgment, and garnisheed the New Amsterdam Casualty Company. Subsequently, the company brought an action in the district court for a declaratory judgment, naming as defendants, Martin and Buell Doelle, the attorney who defended Jones in the civil case, and asking for a determination of their rights under the policy. The company relied upon the claim that the shooting, being intentional on the part of the insured, was not an accident. The district court held that the insurance company was liable as garnishee for the payment of Martin's judgment against Jones, and also, for Doelle's fee in defending Jones; and the company appeals.

The principal questions in the case are whether the intentional shooting of Martin was an accident within the meaning of the policy; whether the insurance contract in question was void as against public policy; and whether the insurance company, as a garnishee defendant, is liable for payment of Martin's judgment against Jones.

From Jones' standpoint, the shooting was not an accident. Whether it was an accident from the standpoint of Martin, and whether the company may be held for payment of damages for the injuries suffered, call for a consideration of the authorities on the subject.

Where an injury is intentionally inflicted upon a person insured under the ordinary accident policy, it is held to be suffered accidentally, and the insurance company is liable for payment, according to the law as laid down by the Supreme Court of Michigan, which is in accord with the great weight of authority. Furbush v. Maryland Casualty Co., 131 Mich. 234, 91 N.W. 135, 100 Am.St.Rep. 605. See collected cases in 20 A.L.R. 1123; 57 A.L.R. 972, 73 A.L.R. 414; 116 A.L.R. 306. This rule is based on the premise that the question whether the injury is an accident, is to be determined from the standpoint of the one suffering it, rather than from the standpoint of the one inflicting it; see Ripley v. Railway Passengers Assur. Co., 20 Fed.Cas. 823, No. 11,854, and cases referred to in Peterson v. Ætna Life Ins. Co., 292 Mich. 531, 535, 290 N.W. 896; and according to the same reasoning, an injury is no less an accident where it is intentionally inflicted by an insured upon another. This construction is not applicable, however, where the injured party is an aggressor in a fight, or blamable for injuries received therein. Martin suffered an accidental injury.

The policy in question insured against liability for accidental bodily injury suffered by any person not employed by the insured, on the oil station premises. It is argued that one cannot insure himself against his own intentional, illegal acts. This contention is grounded on the proposition that such a contract is contrary to public policy and is therefore void. The public policy governing such contracts is

that one should not profit from his own wrongful act, and that contracts to commit illegal acts or agreements which have a tendency to encourage unlawful conduct, are not to be sustained.

In this regard, it is to be remembered that the insured is not seeking indemnity for the consequences of his own wrongful conduct; and that the provisions of the contract did not specifically insure against liability for unlawful acts. If the insured were bringing the action, a complete defense could be predicated and sustained on grounds of public policy that he could not profit by securing indemnity for his intentional wrongdoing; and if the policy had specifically insured against liability for intentionally injuring another, the contract would doubtlessly be void for its tendency to encourage illegal conduct.

Public policy is a changing concept and, in the case of a particular state, must be viewed in the light of the legislative acts and judicial pronouncements of that state; and courts are careful not to set aside contracts on grounds of public policy except in a clear case.

As an instance, suicide was formerly a defense to a suit on a life insurance policy. In Northwestern Mutual Life Insurance Co. v. Johnson, 254 U.S. 96, 41 S.Ct. 47, 65 L.Ed. 155, however, it was held, contrary to what had previously been said in Ritter v. Mutual Life Insurance Co. of New York, 169 U.S. 139, 18 S.Ct. 300, 42 L.Ed. 693, that a provision of a life insurance policy that it would be void if the insured died by his own hand within a stated period from the date of the policy, was an inverted expression of incontestability after that period, and meant that the suicide of the insured, sane or insane, after the specified time, should not be a defense. Such provision was upheld, inasmuch as it did not appear that the law of the state concerned adopted a contrary attitude. See note in 13 A.L.R. 674. It is of interest to observe that some states have adopted statutes providing that suicide, unless contemplated when the policy was applied for, shall be no defense in an action thereon. See Iowa State Traveling Men's Ass'n v. Ruge, 8 Cir., 242 F. 762. Under such statutory provisions, it is held that a stipulation in a policy that the company shall only be liable for a portion of the amount stated in the policy, in case of suicide, is void and cannot be set up as a defense. Whitfield v. Ætna Life Insurance Co. of Hartford, 205 U.S. 489, 27 S.Ct. 578, 51 L.Ed. 895. In Cooley's Briefs on Insurance, Vol. 1, p. 842, it is said that, regardless of the question whether suicide is an excepted risk, the procurement of insurance with intent to commit suicide is a fraud on the insurer, rendering the policy void in its inception. It would seem that such a criterion—that the unlawful act be not within the contemplation of the insured at the time of the execution of the policy—is a proper one to be applied in many cases where similar defenses of illegality are relied upon.

For further analogy, in Michigan gross negligence is defined as willful and wanton misconduct. Boyle v. Moseley, 258 Mich. 347, 241 N.W. 849. It does not mean a degree of negligence, but is an intentional failure to perform a manifest duty in reckless disregard of consequences as affecting the life or property of another. Patton v. Grand Trunk Western Railway Co., 236 Mich. 173, 210 N.W. 309; Lett v. Summerfield & Hecht, 239 Mich. 699, 214 N.W. 939; Bobich v. Rogers, 258 Mich. 343, 241 N.W. 854; Johnson v. Fremont Canning Co., 270 Mich. 524, 259 N.W. 660; Schlacter v. Harbin, 273 Mich. 465, 263 N.W. 431. Yet it is not to be supposed that an insurer would not be liable under a liability policy on the ground that the insured was guilty of gross negligence. See Pawlicki v. Hollenbeck, 250 Mich. 38, 229 N.W. 626; Albrecht Co. v. Fidelity & Casualty Co., 289 Ill.App. 508, 7 N.E.2d 626.

In Herrell v. Hickok, 57 Ohio App. 213, 13 N.E.2d 358, plaintiff, while riding as a guest in an automobile in the State of Michigan, suffered injuries alleged to have resulted from the willful and wanton misconduct, or gross negligence, of the defendant driver. Under Michigan statutes, a guest passenger has a right of action against the driver of a motor vehicle for damages resulting from such gross negligence. Plaintiff brought action in Ohio, relying on the above statute. In answer to a special interrogatory, the jury found that the accident was caused by defendant's willful and wanton misconduct; and plaintiff had judgment. Execution thereon having been returned unsatisfied, plaintiff then sued the insurance company that had insured defendant against liability for damages "accidentally sustained" by another in an automobile accident. The company contended that such insurance for acci-

dental injuries, did not insure against willful and wanton misconduct. The Court of Appeals, while observing that it could not be said that defendant had intended to cause the injuries complained of, nevertheless, stated that he did intend the willful and reckless act which caused the injuries; and held the insurance company liable, under the Michigan law. While none of the foregoing cases is exactly in point, they indicate the departure made by courts from the old narrow common law rule that insurance against any negligent conduct or unlawful acts was contrary to public policy. "The question whether an agreement is void on the ground that it is contrary to public policy is to be determined by its general tendency." Sampliner v. Motion Picture Patents Co., 2 Cir., 255 F. 242, 251. We find no tendency opposed to public policy in the insurance contract in question.

■ In the instant case, Jones had never seen Martin before the time he came to the oil station to buy gasoline; and he shot him, without knowing who he was, after a dispute of a few moments. His defense in the criminal case was that he thought Martin was a racketeer who was employed to ruin his business, during a price-cutting "war" in Detroit, in which many oil station operators had been brutally assaulted. By no stretch of imagination can it be said that the shooting, or unlawful conduct, could have been previously within the contemplation of Jones at the time he procured the policy insuring himself against accident suffered by others on his premises. The execution of the policy did not place a premium on the wrongful assault. It did not tend to encourage unlawful conduct. It did not arouse an illegal temptation. Viewed from a common sense standpoint, neither the contract, nor a recovery thereunder by Martin, can be held to be against public policy. Upon the record before us, we assume that execution on Martin's judgment against Jones was returned, unsatisfied. The vague possibility of benefit to Jones—that some time in the distant future, when he may have accumulated a sum of money equal to the amount of the damages assessed against him, he will be saved from payment of Martin's judgment against him—is too remote, and uncertain to require that a court hold that such nebulous consequences (not induced by the stipulated protection from financial liability) are sufficient to void the insurance contract on grounds of public policy because of a wrongdoer's chance of thus profiting by his own unlawful act. The policy was valid. Enforcement by Martin of liability thereunder is not against public policy.

■ But it is contended that Martin's right of recovery against the insurance company is dependent on the like right of Jones against the company, and that according to the controlling statute (§ 12460, Comp.Laws of Mich.1929), while a writ of garnishment may issue against a liability insurer on a judgment returned unsatisfied against the insured, the insurer "shall have all the defenses in any action brought under the provisions of this section that it originally had against its assured under the terms of the policy * * *." However, the insurance company is not here relying on any defenses which it may have against the judgment creditor, or would have against the insured *under the terms of the policy*. Such defenses would conceivably relate to the specified exclusions, notice of accident, cooperation by assured, assumption of liability, action against the company, subrogation, payment of premiums, policy changes, consideration, representations, and the like—terms upon which the contract was executed. None of these are here submitted as defenses. We find nothing in the provisions of the cited statute that militates against Martin's right to recover against the insurance company on his judgment against Jones.

We come then to the question whether Martin was covered by the policy, and is entitled to garnishee the insurance company. It is provided by § 12460, Comp. Laws of Mich.1929, that no policy of insurance against loss or damages resulting from accident to or injury suffered by a person for which the person insured is liable, shall be issued by any insurer unless the policy states that, in case execution against the insured is returned unsatisfied in an action brought by the injured person, "an action in the nature of a writ of garnishment may be maintained by the injured person * * * against such * * * insurer under the terms of the policy for the amount of the judgment in the said action"; and that bankruptcy or insolvency of the insured shall not release the insurer from payment of the damages sustained. Insurer's contract did not comply with the statute, but instead, contained a provision that insolvency of the insured

196

did not release the company from any payment otherwise due thereunder, and that upon an unsatisfied return of execution on a final judgment against the insured, "the judgment creditor shall have a right of action against the company to recover the amount of said judgment to the same extent that the assured would have had to recover against the company had the assured paid the judgment." Such a provision tends to support the company's claim that Martin's rights against it are measured by Jones' rights. This is contrary to the provisions of the statute that the judgment creditor could maintain a writ of garnishment against the insurer *for the amount of the judgment.*

 However, insurance contracts are subject to statutory regulation; they should be construed in the light of statutory requirements; and, if lacking in compliance therewith, mandatory statutory provisions will be read into the policies. Galkin v. Lincoln Mutual Casualty Co., 279 Mich. 327, 272 N.W. 694; Chrysler Corp. v. Hardwick, 299 Mich. 696, 1 N.W.2d 43. The statutory provision that no policy be issued, unless it states that the judgment creditor have the right to maintain a writ of garnishment against the insurer for the amount of the judgment, is equivalent to a mandatory provision that such statement be made a part of the policy. According to such provisions, the injured party has the right to enforce payment of his judgment against the insurer, in this case. The above-mentioned provisions of the statute are sufficient to dispose of the company's contention that Martin was not covered by the policy and could not maintain garnishment against the insurer for the judgment.

Furthermore, it is obvious that the policy was not a mere simple contract between the company and Jones. The issuance of insurance policies, the business of insurance companies, and the rights of injured parties where there exists liability insurance, are permeated with a public interest; and such parties, under many circumstances, have rights, superior and greater than the insured, against the insurer. See Iden v. Huber, 259 Mich. 3, 242 N.W. 818; Flanagan v. Harder, 270 Mich. 288, 258 N.W. 633; Davis v. Automobile Ass'n, 124 N.J.L. 364, 12 A.2d 387. Ordinarily, a beneficiary of such an insurance contract may maintain an action thereon, though not named therein, when it appears by fair and reasonable intendment that his rights and interests were in the contemplation of the parties, and were being provided for at the time of making the contract. Slavens v. Standard Accident Insurance Co., 9 Cir., 27 F.2d 859. See, also, Ætna Life Insurance Co. v. Maxwell, 4 Cir., 89 F.2d 988; Restatement of the Law of Contracts, §§ 133–147.

With regard to the Doelle claim, based on legal fees for services rendered to Jones in the civil suit brought against him by Martin, the policy provided that the company would defend "any suit against the assured even if groundless, brought on account of any accident covered by this policy. * * *" The company breached the contract by refusing to defend the suit. The fee is admitted to be reasonable in amount for the services rendered. The company here denies liability on the ground that the policy provided only for defense of claims covered therein. We have decided that Martin's claim against Jones was covered by the policy; and it follows that the company is liable for payment of the Doelle claim.

The judgment of the district court is affirmed.