## PETROLEUM CASUALTY CO. v. BRISTOW.
### No. 2499.

Court of Civil Appeals of Texas. El Paso.
Feb. 26, 1931.

Rehearing Denied March 19, 1931.

**WALTHALL, J.**

This is a second appeal of this case. A full statement of the case on the first appeal is found in 21 S.W.(2d) 9, to which we refer, and need not be repeated here. This trial was had with the same issues as in the first trial, and submitted to a jury on special issues, with the result that appellee was awarded judgment for compensation for total permanent incapacity, and in a lump sum, with interest from date of judgment.

The jury found:

1. That Bristow on July 14, 1928, sustained a personal injury in the course of his employment with the Humble Pipe Line Company.

2. That Bristow, as a result of his injury, sustained a total disability.

3. That the total disability to Bristow by said injury is permanent.

Questions 4, 5, 6, 7, and 8, referring to partial disability, were not answered.

9. A manifest hardship and injustice will result to Bristow in the event compensation due him is not paid in a lump sum.

10. The rate of discount that the Petroleum Casualty Company is entitled to receive on future payments of compensation, if paid in a lump sum now, is 6 per cent.

11. "What per cent. of disability, if any you have found, do you find was caused to J. T. Bristow, if any, by the accident and injury which he received on the 29th day of September, 1909, when falling from a locomotive tender in New Mexico? Answer with the per cent., if any. Answer, 'None.' "

12. The average wages earned by Bristow per day during the days when so employed during the year immediately preceding his injuries on July 14, 1928, was $6.50.

Issues requested by appellant and submitted:

"1. What per cent. of disability, if any, suffered by J. T. Bristow, do you find from a preponderance of the evidence would have resulted from the injury of July 14, 1928, had there been no prior injury of September 29th, 1909? Answer by giving the per cent. Answer: 100%."

2. The disability suffered by Bristow was not the result of pyorrhea or toxic poison.

3. (Conditional and not answered.)

4. No portion of the disability suffered by Bristow is due to arthritis.

5. (Conditional and not answered.)

6. The disability or incapacity sustained by Bristow is not due to lumbago.

The trial court made the calculations necessary to be made on the findings of the jury and so entered judgment for appellee and appellee's attorneys in the proportions they were to receive same.

Knox W. Gilmore, of Houston, and R. D. Blaydes, of Fort Stockton (R. E. Seagler, of Houston, of counsel), for appellant.

White & Yarborough, of Dallas, and Hart Johnson, of Fort Stockton, for appellee.

This appeal is duly prosecuted from the judgment rendered.

## Opinion.

Appellant's first four propositions are based upon assigned error in sending the jury back to their jury room for further deliberation after the jury had answered the special issues. We copy appellant's bill of exceptions as to what occurred in sending the jury back, and the court's qualification to the bill. Omitting the formal parts, it reads:

"After the argument had closed and the jury had retired to consider their verdict with the Court's main charge and main issues, together with the special issues requested by cross-defendant and after the jury had been out for approximately two hours or more, they returned into open court and reported that they had arrived at a verdict and presented the Court with the charge and special issues together with their answers signed by the Foreman, and Special Issue No. 6 requested by cross-defendant, which special requested issue and the answer of the jury thereto as well as Special Issue No. 7, requested by cross-de-defendant, was as follows, to-wit:

" 'Special Issue No. 6 requested by cross-defendant:

" 'Do you find from a preponderance of the evidence that the disability or incapacity sustained by J. T. Bristow, if any, is due to lumbago? Answer "Yes" or "No."

" 'Answer: "Yes."

" 'Special Issue No. 7, requested by cross-defendant was as follows:

" 'If you have answered Special Issue No. 6, requested by cross defendant "Yes," then answer the following:

" 'But if you answer it "No" you need not answer the following: What percent of disability, if any, suffered by J. T. Bristow is due to lumbago? Answer by giving the percent.

" 'Answer: ———.'

"And after the jury had presented the Court with the special issues, including cross-defendant's requested issues and their answers thereto the Court proceeded in the presence of the jury to read the special issues together with the answer to each special issue and proceeded in numerical order until the answer to the cross-defendant's requested Special Issue No. 6 was read aloud in the presence of the jury and the attorneys and when the court had finished reading cross-defendant's requested Special Issue No. 6, and the answer thereto, he then stated that no answer was made to Special Issue No. 7, requested by cross-defendant and hesitated, and then in an undertone stated to Mr. H. J. Yarborough, one of the attorneys for cross-plaintiff, substantially as follows:

" 'Yarborough, I am afraid that this answer will not support a judgment.'

"Whereupon Mr. Yarborough stated that in his opinion it would as the jury had answered the main issues in his favor, and K. W. Gilmore, one of the attorneys for cross-defendant, asked Mr. Yarborough not to talk so loud in the presence of the jury, whereupon the Court in an undertone, again stated that he was doubtful about the matter and that he did not know exactly what to do, that he did not know whether it would be error to send the jury back or whether he should accept the verdict as it was and decide what kind of judgment to render upon the answers of the issues, and again Mr. Yarborough stated that he would be willing to accept the verdict of the jury as it stood and that he thought that as they had answered the other issues in his favor that their verdict would support a judgment in his favor, whereupon K. W. Gilmore again admonished Mr. Yarborough not to talk so loud in the presence of the jury and the Foreman of the jury was standing between the railing and the Judge's bench and in hearing distance of the conversation, thereupon asked the Court if there was something he did not understand or if they had made a mistake or words to that effect, and the Court advised the Foreman that "We are just discussing one or two matters and will let you know shortly.' Or words to that effect and after some hesitation the court stated that he would not accept the verdict and K. W. Gilmore, one of the attorneys for cross-defendant, stated to the court in a low undertone, that if the jury were retired for further consideration, it would be over his protest and he objected to such further consideration, that the jury had not asked for any further instructions either written or oral and had heard the questions and answers read and made no comment or advised the Court of any error or mistake, and as Special Issue No. 6, requested by Cross-defendant was framed it did not necessarily require an answer to Special Issue No. 7, requested by cross-defendant and that if the Court retired the jury for further consideration that he should instruct them to answer Special Issue No. 7, whereupon the Court gave the jury the following instructions:

" 'Gentlemen: The Court is of the opinion your verdict is incomplete and I will ask you to retire and consider it further.'

"Whereupon the jury retired and within about thirty minutes returned with their verdict and which verdict showed that the answer to Special issue No. 6, requested by the cross-defendant had been changed from 'Yes' to 'No' by scratching out the word 'Yes' and writing the word 'No', and this cross-defendant, in support of this Bill of Exception, respectfully refers to the affidavit by the Trial Court, Hon. C. R. Sutton, attached to its amended motion for a new trial and marked 'Exhibit A' and made a part of said motion and to which action of the Court, in retiring the jury for further consideration, and not instructing

them to answer special requested Issue No. 7, and the conversation and discussion and deliberation by the Court and the attorney for cross-plaintiff in the presence and hearing of the jury, cross-defendant then and there in open court objected for the following reasons, to-wit: That said verdict of the jury was complete and a finding for the cross-defendant, and that the Special Issue No. 6, requested by cross-defendant did not require the answer to Special Issue No. 7 in order to make said finding complete by the jury for said special issue asked the jury if they found from the preponderance of the evidence that the disability or incapacity sustained by J. T. Bristow, if any, was due to lumbago, and the jury answered that it was, and the failure to answer what percent was due to lumbago did not necessarily or impliedly signify that the jury had rendered an incomplete verdict but their finding and answer to Special Issue No. 6 was a finding that the disability and incapacity suffered by Bristow was due to lumbago, and a complete verdict and for the further reason that the procedure had by the Court and with the attorney in the presence and hearing of the jury, even though they did not hear the remarks of the Court, conveyed to the jury the idea and information that their verdict 'as written might not permit the cross-plaintiff to recover and conveyed to the jury the information as to the effect of their answers and the Foreman standing in close proximity to the Court and the attorneys, could not help but gain the information that the Court was of the opinion that their verdict and answers to the special issues did not or might not support a verdict for the cross-plaintiff, and in order to make sure that he would recover they retired under the instructions of the Court to complete their verdict, and changed the same, and for the reason that the court was giving oral instructions to the jury in addition to his written charge and notwithstanding the fact that the court may have had the right to retire the jury for further deliberation it was error to do so in such a manner as would convey the information as to the effect of their answer or even permit the jury to gain such information after they had arrived at a verdict, and then permit them to change the same, and which objections and each and all of them were by the Court overruled and to which action of the Court cross-defendant then and there excepted and here and now in open Court tenders this, its Bill of Exception No. 1, and prays that the same may be examined and approved by the Court and ordered filed as a part of the record in this cause.

"R. B. Blaydes
"Knox W. Gilmore,
"Attorneys for cross-defendant.

"The foregoing bill is approved this 23d day of June, 1930, with the following qualification and explanation:

"The statement contained in the bill that the issues and answers were read in order until No. 6, was completed when the Court stopped and hesitated etc., is not correct. The verdict was received and read in this manner 'To Special Issue No. 1, the jury answer (giving their answer)' and this was continued throughout and when No. 6 (Special) was reached the answer was given as in the others and No. 7, reached with the statement that to Special requested Issue No. 7, the jury give no answer.'

"Thereupon the conversation between the Court and the attorneys occurred but in a tone that none of the jury, not even the Foreman could possibly hear or gather what the conversation was about, except that they must have known that there was something wrong with the verdict. The foreman was just inside the rail some 25 feet away and could not possibly have heard anything that was said, and his affidavit which is attached to this qualification is to that effect.

"It is true that Mr. Gilmore admonished Mr. Yarborough not to talk too loud, but it was evident that none of the jury could hear.

"The statement that anything was done or said to indicate to the jury what the Court thought ought to be the verdict is incorrect, because nothing was done or said that could indicate to the jury that the Court had any opinion, which the Court did not have, and the jury were retired again for the only purpose of getting the verdict in proper shape so a judgment might without doubt be written on the findings of the jury.

"C. R. Sutton, Judge Presiding."

The court qualified the bill and attached and made it a part of the record, and an affidavit of the foreman of the jury as follows:

"Before me, the undersigned authority on this day personally appeared Harry Harris, known to be a credible person, who after being by me duly sworn, stated on oath as follows:

"I was foreman of the jury in the case of Petroleum Casualty Company vs. J. T. Bristow, in the District Court of Pecos County, 83rd Judicial District of Texas, when the case was tried in March, 1930. I was present during the time that the jury waited in the court room after I had handed the verdict to the court and before the court sent the jury back for further deliberation. During the time that the jury was in the room I stood in front of the other jurors and between them and the judge's desk and at a distance of about twenty-five feet from the desk. I could not hear any remarks made by the Court or by counsel for either side during the time the jury waited before being returned to the jury room by the Court, and especially heard no remarks by Mr. Yarborough, attorney for Bristow. When the court first read the verdict as the jury had returned it there

was nothing in his way of reading same that indicated to me that anything was wrong with it. I knew from the reading of the verdict however that I had made a mistake in writing down the jury's answer to the last 'question answered, but I knew this because I knew what should have been written down and realized that I had accidentally reversed the answer.

"Harry Harris, Affiant

"Sworn to and subscribed before me, this the 19th day of June, 1930. Bruce Hinsey, Notary Public, Pecos County, Texas."

Appellant assigns as error the action of the court in sending the jury back for further deliberation, and suggests that what had occurred led the jury to know the effect of their answers with reference to who will recover thereon, and that so knowing, the jury changed their answer as indicated in the bill of exceptions, from "yes" to "no" on special requested issue No. 6, and made no answer to No. 7.

Appellant quotes at length from the evidence and submits that the evidence was sufficient to support the finding that Bristow's disability was due to lumbago.

▆▆ Appellant assumes, and bases its several propositions upon the assumption, that what occurred advised the jury of the effect of the answer, was in favor of appellant and against the interest of appellee, and that the jury being so advised changed the answer. We must accept the statement of the trial court in his qualification to the bill. Appellant accepted and filed the bill of exceptions as modified by the court and is bound by the qualification. Texas Jurisprudence, vol. 3, p. 657, and note referring to many cases so holding. It will be presumed in the absence of something in the way of a bill of exceptions signed by the judge or bystanders that the qualifications were made with the consent of appellant.

▆▆ Article 2207 of the Statutes makes it the duty of the court, where the verdict is informal, defective, or not responsive to the issues submitted, to call the jury's attention thereto, and send the jury back for further deliberation. The record shows, we think, that the court did no more than it was his duty to do. The jury was bound to know that there was some informality or defect in the verdict to be corrected. In cases submitted on special issues, as here, judgment is not based on any single finding, but upon the entire finding of the jury, and where there is an apparent conflict in the findings on issues submitted, judgment may not be entered until the conflict is removed by the jury. The jury had answered that Bristow had sustained a personal injury in the course of his employment, and that as a result of such injury he had sustained a total permanent disability, in answer to issues 2 and 3. It might very well be reasoned that if his total permanent disability was the result of the injury received in the course of his employment at the time and place indicated, no part of his disability was the result of lumbago or any other cause. But appellant requested, and the court submitted the questions, whether any of Bristow's disability was due to lumbago, and if it was, answer what per cent. If the jury answered "yes" to the first question, they should then answer as to the per cent. To answer "yes," there would then be a possible irreconcilable conflict in the findings. The jury evidently saw the conflict and corrected their findings. The court was not in error in sending the jury back for further deliberation. The court would not have been in error to have indicated to the jury the defect in the verdict, if there was no intimation by the court as to what the finding should be, which the record sufficiently shows was not done.

The court submitted to the jury the following:

"What per cent. of disability, if any you have found, do you find was caused to J. T. Bristow, if any, by the accident and injury which he received on the 29th day of September, 1909, when falling from a locomotive tender in New Mexico? Answer with the per cent. if any."

The jury answered, "None."

▆ Appellant insists that it was reversible error to only ask the jury what per cent. of disability was caused appellee by the previous injury, when the inquiry should have been "what per cent. of incapacity would have resulted from the injury complained of had there been no previous injury?"

Section 12c of article 8306, R. S., 1925, provides: "If an employee who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed," the association is liable only for compensation to the subsequent injury. We see no practical difference in the issue submitted from that provided in the statute. The percentage of compensation should be computed on the subsequent injury, but if the percentage on the previous injury is given, the percentage of the subsequent injury would necessarily be the complement of the one given. It follows, we think, if no per cent. of incapacity resulted from the previous injury, the incapacity suffered, if any, would necessarily be the result of the subsequent injury.

Appellant assigns error to the submission of the issue of payment of compensation in a lump sum, and to enter judgment on the answer of the jury to the issue; the objection being that there was no legal and competent testimony sufficient to show any manifest hardship or injustice.

We have carefully reviewed the evidence and have concluded that it shows a manifest hardship and injustice would result, especially in view of a total permanent incapacity having resulted from the injury. Article 8306, § 15, R. C. S.

The statute does not fix a rate of discount in arriving at the present value of an award payable in weekly installments to be used in arriving at a lump-sum settlement, so that such rate of discount being an issue of fact must be determined by the jury. The jury found the rate of discount to be 6 per cent. The evidence covers several pages of the record. We think from the evidence it can be safely concluded it shows a rate of six per cent.

A question, reviewing the facts of this particular case, was asked a well-qualified witness, what he would say would be the reasonable rate of interest to pay the deferred payments, when the attorney for appellant remarked: "The statute fixes that. I agree that past due installments should bear 6% if he (meaning appellee) is entitled to compensation." The record does not show that the witness answered the question. While we think the evidence sufficiently shows that 6 per cent. would be the rate, the statement of the attorney may be admission of record, and relieved the necessity of additional evidence, if any was necessary.

The record shows the following: This case was filed November 5, 1928; the next term of the court was begun on March 11, 1929, and the first trial was on March 18, 1929; an appeal was taken from that trial and the mandate from the appellate court was filed in the trial court on March 6, 1930; in the trial court this trial was set March 10 or 12, 1930, for trial on March 18, 1930. The record shows that before the mandate was returned some correspondence was had between the attorneys of the parties in an effort at a compromise but without result. On March 12, 1930, the attorney for appellant was notified of the setting of the case for trial. On March 18, 1930, appellant filed its motion asking the trial court to select a physician or physicians known to the court to be competent and trustworthy, and enter an order directing the appellee to be physically examined, etc. The bill of exceptions is lengthy covering several pages of the transcript, the subject-matter in the bill of exceptions includes a conversation, apparently in the presence of the court, between the attorneys for the parties, as to some former examinations and treatments by physicians of appellee. At the conclusion of the conversation the court said: "I will appoint Mr. (Doctor) Moore to make the examination again, provided he can do it between now and two o'clock." To which the attorney for appellant replied:

"For the sake of the record we want to save an exception to that on the ground that Dr. Moore is not equipped with an X-ray machine, and the very nature of the inquiry necessitates an examination by doctors equipped with X-ray machines to disclose what percent of disability, if any, what percent of toxic poison, if any, is the result of the previous injury, and this is the first opportunity we have had since the case was reversed to have such examination. I will announce ready, provided I don't have to put on any testimony before tomorrow. I wired my witnesses and told them it would be tomorrow before we would get to it anyway."

The court: "I don't think so."

Then follow in the same bill of exceptions as to what occurred after the trial on the merits was concluded. Excerpts from the testimony of appellee on the former trial introduced, showing that appellee was under treatment by Drs. Fry and Lott, of Dallas, appellant having requested him to call on Dr. Lott for examination; witness stated his physical condition while in Dallas several weeks and the treatment by the physicians; stated that he did what the doctors required him to do; the testimony of Dr. Lane B. Cook, as found in the statement of facts, who was called in consultation by Dr. Fry, and referred appellee's case to him for treatment and advice, and who had made an X-ray of appellee, and who still had the picture, and testified on the trial, was introduced over objection of appellant. Dr. Lott's report to appellant, on his examination with Dr. Fry, was introduced. After hearing the evidence as above, the court, over objection of appellant, appointed Dr. Moore of Fort Stockton to make the examination of appellee; the objection being that Dr. Moore was not equipped with an X-ray machine, and that the nature of the injury claimed necessitated the examination by doctors so equipped, to disclose what per cent. of disability, if any, was occasioned by toxic poison, was the result of any previous injury or disease, and for the reason that appellant had not had an opportunity to have said examination made and treatment provided as was offered, and that it was error for the court to refuse to compel appellee to submit himself to examination by doctors appointed by the court equipped to make the examination.

The court qualified the bill of exceptions by the statement that the case had been set for trial for the date it was called; that the motion for examination of appellee was filed on the date the trial began and previously set; that appellant did not request any particular doctor, but requested that the court appoint a doctor to examine appellee, and on the hearing requested that it be an X-ray examination, which the court declined to do, because it was ascertained by the court that a doctor equipped with an X-ray machine was not available and there was none available. Dr. Moore was appointable because he had previously examined appellee, and no objection was

252

made by appellant to his appointment, but to the failure of the court to cause an X-ray examination.

The proposition suggesting error is along the line indicated in the above bill of exceptions and to the effect that appellee alleged that he was permanently and totally incapacitated by reason of a strained, separated, dislocated, and broken sacroilliac joint, it was error to appoint Dr. Moore who was not equipped with X-ray machines to make the examination while the nature of the injuries necessitated an X-ray picture to determine the alleged injury, its extent and duration.

Section 4, of article 8307, of the Statutes, gives appellant the privilege of having appellee examined by a physician at reasonable times, at a place suitable to the condition of appellee and convenient and accessible to him. Here, no objection on the part of appellee to have an examination is shown. He was willing. The point made is the action of the court in overruling the motion for the appointment of a physician equipped with an X-ray machine, and at the time and under the circumstances shown. To have sustained the motion would have necessitated a postponement and probably a continuance of the case for the term. No motion for a postponement or continuance for the purpose of such examination was made, but knowing the action of the court on the motion appellant announced ready for trial. The only question presented is one of diligence in presenting the motion and demanding an X-ray examination. The trial court did the best he could under the circumstances, and have a trial at that term, in appointing a physician to make the examination.

We have concluded that the record presents no reversible error. On the former trial the case was reversed and remanded for another trial. Appellee had formerly been under the treatment of physicians selected by appellant who had taken X-ray pictures of appellee, and appellant must have known long before the case was set for trial of the necessity and advisability of such additional examination, if such was the case, in view of another trial. It is not alleged nor attempted to be shown that appellee's condition as to his injury is any different from what it was at the former trial. No abuse of the court's discretion in not acceding to appellant's demand for an X-ray examination is shown, and the proposition is overruled. Texas Employers' Ins. Ass'n v. Adcock (Tex. Civ. App.) 27 S.W.(2d) 363; Employers' Liability Assur. Corporation v. Williams (Tex. Civ. App.) 293 S. W. 210; Texas Employers' Ins. Ass'n v. Knouff (Tex. Civ. App.) 271 S. W. 633; Texas Employers' Ass'n v. Downing (Tex. Civ. App.) 218 S. W. 112; United States Fidelity & Guaranty Co. v. Nettles (Tex. Civ. App.) 21 S.W.(2d) 31.

It was not error for the court to find that appellee filed his claim for compensation within six months from the date of injury and gave the notice of such filing, and not submit to the jury whether such claim was filed in time. No controversy in the evidence is made that the claim was not filed in time. Again, appellant's petition alleges the facts, which relieves against the necessity of such finding or proof of such finding.

The witness A. W. Dunn was permitted to say, on a purely hypothetical question as to the rate of discount to be allowed, that he "could not say in a case of that kind. I could not say whether 8 or 10% would be reasonable in a case of that kind; I am not in possession of facts on that." There was no answer to the question. No error is shown.

Appellee was asked: "In your opinion will you ever be able to work again?" To which he answered: "No."

The weight of authority in this state is that an injured party claiming damages may, after describing the nature and extent of his injuries, and the effect thereof upon his physical system, give his opinion as to the probable effect of such injuries upon his earning capacity in the future. Texas Employers' Ins. Ass'n v. Davies (Tex. Civ. App.) 6 S.W.(2d) 792, and cases there cited.

The case is affirmed.