## TRADERS & GENERAL INS. CO. v. WATSON.

### No. 1925.

Court of Civil Appeals of Texas. Eastland.

July 7, 1939.

Rehearing Denied Sept. 22, 1939.

Cox & Hayden and Ben L. Cox, all of Abilene, and Lightfoot, Robertson & Gano, of Fort Worth, for appellant.

Anderson & Dickson, of Sweetwater, for appellee.

GRISSOM, Justice.

This is an appeal from a judgment in favor of the claimant, A. C. Watson, against the insurance carrier, Traders & General Insurance Company, in a workmen's compensation case.

The court submitted to the jury the following special issues, which were answered as shown:

"1. Do you find from a preponderance of the evidence that the Traders & General Insurance Company was the carrier of an insurance policy covering the employees of Charles M. Watson on the 13th day of May, 1937? Answer: Yes.

"2. Do you find from a preponderance of the evidence that A. C. Watson sustained a personal injury on or about the 13th day of May, 1937, in the manner alleged by him? Answer: Yes.

"3. Do you find from a preponderance of the evidence that such injury, if any, sustained by A. C. Watson on or about the 13th day of May, 1937, was received by him in the course of his employment with Charles M. Watson? Answer: Yes.

"4. Do you find from a preponderance of the evidence that A. C. Watson sustained any incapacity to work or labor as a natural result of such injury, if any, sustained by him on or about the 13th day of May, 1937? Answer: Yes.

"5. Do you find from a preponderance of the evidence that A. C. Watson was total- ly incapacitated as a natural result of such injury, if any, sustained by him on or about the 13th day of May, 1937? Answer: Yes.

"6. Do you find from a preponderance of the evidence that such total incapacity, if any, sustained by A. C. Watson, is permanent? Answer: Yes.

"7. Do you find from a preponderance of the evidence that the payment of compensation to A. C. Watson, if any, in weekly installments instead of a lump sum (if compensation is due to be paid to A. C. Watson) will result in a manifest hardship and injustice to A. C. Watson? Answer: Yes.

"8. Do you find from a preponderance of the evidence that the incapacity of A. C. Watson, at this time, if any, to labor, is not due solely to cause or causes other than such injuries, if any, sustained by him on May 13, 1937? Answer: It is not due solely to other causes.

"9. Do you find from a preponderance of the evidence that A. C. Watson worked substantially the whole of the year next preceding May 13, 1937? Answer: Yes.

"10. What do you find from a preponderance of the evidence was the average daily wage of A. C. Watson for the days he actually worked during the year next preceding May 13, 1937? Answer: $6.00 per day.

"11. Do you find from a preponderance of the evidence that other employees worked substantially the whole of the year next preceding May 13, 1937, in the same class of work as that of A. C. Watson, in the same or similar employment and in the same or neighboring place? Answer: Yes.

"12. What do you find was the average daily wage of such employees, if any, for the days they actually worked, if any, for the year next preceding May 13, 1937? Answer: $6.00 per day.

"13. Do you find from a preponderance of the evidence that such incapacity, if any, sustained by A. C. Watson, was due solely to his pricking his finger with a knife? Answer: No.

"14. Do you find from a preponderance of the evidence that Charles M. Watson had actual notice of such injury, if any, sustained by A. C. Watson within thirty days after such injury, if any, occurred? Answer: Yes."

(The instructions given in connection with the issues are omitted.)

The court entered judgment for claimant amounting to $20 per week for a period of 398 weeks. The judgment, after quoting the verdict of the jury, recites "and *it appearing to the court from the undisputed evidence that such total and permanent disability commenced on May 30, 1937,* * * * and that *A. C. Watson is entitled to recover* * * * *in a lump sum compensation for a period of 398 weeks at $20 per week* * *."* (Italics ours).

From the judgment rendered insurer has appealed.

■ The insurer by its first four propositions presents its contention that the judgment must be reversed because there was no issue submitted to the jury whereby the jury could, or did, find when claimant's total permanent incapacity began, or the number of weeks claimant will suffer total disability. Prior to submission of the charge to the jury, insurer specifically excepted to the charge because it did not submit an issue whereby the jury might determine when claimant became totally disabled, or when his "injury" became permanent, "therefore the court does not have any date from which to begin the time when compensation shall run' thereon." The exception was overruled and the point duly preserved in the insurer's amended motion for new trial. Claimant says that insurer's objection and exception was insufficient; that it was the insurer's duty to submit a proper issue. He cites as authority therefor, among other cases, Harris v. Thornton's Dept. Store, Tex.Civ.App., 94 S.W.2d 849, and Harris v. Leslie, Chief Justice, 128 Tex. 81, 96 S.W.2d 276. The cases cited do not support the proposition. The issue ' was not defensive. The burden to obtain a finding thereon rested on the claimant, not the insurer. Special issues numbers 2, 4, 5, and 6 are the only ones directly relevant to the question under consideration. In answer ·to said issues the jury found that claimant sustained a personal injury about the 13th day of May, 1937; that claimant sustained some incapacity to work as a natural result of the injury of May 13th; that claimant was totally incapacitated as a natural result of the injury sustained by him on May 13th and that such total incapacity sustained by the claimant *"is* permanent." (Italics ours)

By the provisions of Art. 8307, sec. 5, Vernon's Tex.Civ.St.1936, art. 8307, § 5, the burden of proof is placed upon the claimant to establish facts which entitle him to re-cover compensation. This includes the duration of disability. It has now been definitely determined that the compensation period, the maximum period being 401 weeks, begins on the date of the injury, and terminates, in all events, at the expiration of 401 weeks after the date of the injury, and not from the date of development of incapacity. Texas Employers Ins. Ass'n v. Guidry, 128 Tex. 433, 99 S.W.2d 900; Jones v. Texas Employers' Ins. Ass'n, 128 Tex. 437, 99 S.W.2d 903. It results, even if the claimant's total incapacity is permanent, that his maximum recovery could be for no more than $20 per week from the date of development of incapacity until the expiration of the period of 401 weeks from the date of . injury. He is entitled, in any event, to compensation for only the number of weeks he actually suffers incapacity during the period of 401 weeks immediately subsequent to the date of injury. It is evident that in a trial before a jury claimant must, by a jury finding, or by the undisputed evidence, establish facts from which the amount of recovery, or rate and period of compensation, may be arrived at by mathematical calculation.

In Texas Employers' Ins. Ass'n v. White, Tex.Com.App., 99 S.W.2d 904, 905, the jury had returned a verdict in which it was found that White "in August, 1930" sustained an injury, etc., and in "March, 1933" became totally and permanently incapacitated. Judgment was rendered for White for compensation for a period of 401 weeks from the date incapacity began. The court said: "The judgment of the trial court is erroneous to the extent that compensation is awarded for a period extending beyond the end of 401 weeks from the date of the injury. * * * We are unable to reform the judgment, for want of information as to the date the injury occurred and as to the date total incapacity began. The verdict of the jury furnishes no more definite information in those respects than to give the month and year the respective events occurred." (Upon filing of a remittitur "sufficient to account for the greatest possible amount of excessiveness in the judgment" the judgment was affirmed. 129 Tex. 659, 107 S.W.2d 360, 361.)

■ This is not a case where the court attempted to submit an issue requiring the jury to find the number of weeks claimant would suffer total incapacity, or the date total permanent incapacity began. On the contrary, the trial court was of the opin-

ion, and found in the judgment, that the undisputed evidence showed claimant's total permanent disability commenced May 30, 1937, and, such date being approximately three weeks after claimant's injury, the court awarded compensation for a period of 398 weeks. After most careful consideration we find ourselves unable to agree with the conclusion of the eminent trial court that the undisputed evidence shows claimant became totally and permanently disabled on May 30, 1937. It would serve no good purpose to lengthen this opinion by quotation of testimony from which we conclude that it is not indisputably shown that claimant became totally and permanently disabled on said date. Unless conclusively established, it was incumbent on claimant to obtain jury findings which would furnish a definite basis for computation of the amount of recovery, in this instance, the date when claimant became totally and permanently incapacitated, or the number of weeks he will be so incapacitated. Claimant has not obtained such a finding. We conclude the trial court was in error in its finding that the date claimant became totally and permanently incapacitated, if he did, was established by the undisputed evidence. The court was not authorized, as it recognized, to make a fact finding on an independent issue. We think it cannot be said, as contended, that such finding by the court as to the date of commencement of such incapacity was a "supplemental" finding which the court was authorized to make. From these conclusions it results that there was no proper basis for the judgment and it must be reversed. See Art. 8306, §§ 6, 10, 11 and 12; Art. 8307, sec. 5; Art. 8309, sec. 1, Vernon's Tex.Civ.St.1936, art. 8306, §§ 6, 10, 11, 12; art. 8307, § 5; Vernon's Tex.Civ.St. Supp.1938, art. 8309, § 1; Dallas Hotel Co. v. Davison, Tex.Com.App., 23 S.W.2d 708, 709; Bulin v. Smith, Tex.Com.App., 1 S.W.2d 591; Texas Employers' Ins. Ass'n v. Wright, Tex.Com.App., 4 S.W.2d 31; Norwich Union Ins. Co. v. Chancellor, Tex.Com.App., 5 S.W.2d 494; Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.2d 1084; Traders & General Ins. Co. v. Chancellor, Tex.Civ.App., 105 S.W.2d 720; Texas Employers' Ins. Ass'n v. Hilderbrandt, Tex.Civ.App., 62 S.W.2d 209.

The insurer by its fifth, sixth and seventh propositions contends that the court erred in refusing to submit its requested issues inquiring (1) whether claimant's disability was contributed to by a previous injury, and (2) what percent of claimant's disability was caused by the prior injury. The only issues submitted by the court in any manner related to the requested issues were as follows:

"Do you find from a preponderance of the evidence that the incapacity of A. C. Watson at this time, if any, to labor, is not due solely to cause or causes' other than such injuries, if any, sustained by him on May 13, 1937? Answer 'It is due solely to other causes' or 'It is not due solely to other causes.' Answer: 'It is not due solely to other causes.'

"Do you find from a preponderance of the evidence that such incapacity, if any, sustained by A. C. Watson was due solely to his pricking his finger with a knife? Answer 'Yes' or 'No.' Answer: 'No.'"

In support of said contention, the insurer cites Texas Indemnity Ins. Co. v. Perdue, Tex.Civ.App., 64 S.W.2d 386, writ refused; Petroleum Casualty Co. v. Bristow, Tex. Civ.App., 21 S.W.2d 9; Commercial Standard Ins. Co. v. McGee, Tex.Civ.App., 40 S. W.2d 1105, and Art. 8306, § 12c, Vernon's Tex.Civ.St.1936. Said statute provides: "If an employé who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association shall be liable because of such injury only for the compensation to which the subsequent injury would have entitled the injured employé had there been no previous injury."

Different rules are applicable where a claimant's incapacity is contributed to by a preexisting disease and by a prior injury. Where an employee becomes incapacitated by reason of an injury and such incapacity is contributed to by a preexisting disease, the fact that such preexisting disease contributed to the claimant's incapacity does not constitute a defense to the employee's claim for compensation, or reduce the amount of compensation, unless the preexisting disease is the sole cause of the employee's incapacity. If the preexisting disease is the sole cause of an employee's incapacity, then incapacity does not result from an injury and the employee is not entitled to any compensation. Commercial Standard Ins. Co. v. Noack, Tex.Com. App., 62 S.W.2d 72; Guzman v. Maryland Cas. Co., 130 Tex. 62, 107 S.W.2d 356; Traders & Gen. Ins. Co. v. Wright, Tex. Civ.App., 95 S.W.2d 753, 757 (affirmed Tex.Com.App., 123 S.W.2d 314); Texas Employers' Ins. Ass'n v. Horn, Tex.Civ. App., 75 S.W.2d 301, 304; Texas Employ-

ers'' Ins. Ass'n v. Parr, Tex.Com.App., 30 S.W.2d 305, 308; Travelers' Ins. Co. v. Peters, Tex.Com.App., 14 S.W.2d 1007; Texas Employers' Ins. Ass'n v. Burnett, 129 Tex. 407, 105 S.W.2d 200. But, by virtue of the provisions of Art. 8306, § 12c, Vernon's Tex.Civ.St. 1936, a different rule applies where an employee suffers a "subsequent" injury resulting in incapacity, to which incapacity said subsequent injury and a prior injury, or their effects, both contribute. In such case, the compensation insurance carrier is liable "only for the compensation to which the subsequent injury would have entitled the injured employé had there been no previous injury."

■ Upon another trial if there is evidence that claimant suffered a prior injury and that the result of such injury contributed to claimant's present incapacity, the court should submit to the jury whether claimant's prior injury has contributed to claimant's present incapacity, and, if so, what percentage of plaintiff's present incapacity, if any, has resulted solely from the subsequent injury. Texas Indemnity Ins. Co. v. Perdue, Tex.Civ.App., 64 S.W.2d 386, 388, writ refused; Art. 8306, § 12c.

There was evidence that claimant had suffered a prior injury. There was evidence that the arthritic condition in his shoulder could not have developed so soon after the subsequent injury as it was found, from which the jury might have concluded that such condition was produced by claimant's prior injury, and that the prior injury in some degree contributed to claimant's present incapacity. See Williamson v. Texas Ind. Ins. Co., 127 Tex. 71, 76, 90 S.W.2d 1088; Hartford Acc. & Ind. Co. v. Leigh, Tex.Civ.App., 57 S.W.2d 605, 607; Texas Employers' Ins. Ass'n v. Stephens, Tex.Civ. App., 22 S.W.2d 144, 146; Petroleum Casualty Co. v. Bristow, Tex.Civ.App., 35 S. W.2d 246, writ dismissed; Id., Tex.Civ. App., 21 S.W.2d 9, writ dismissed; Texas Employers' Ins. Ass'n v. Van Pelt, Tex.Civ. App., 68 S.W.2d 514, 516; United States Fidelity & Guaranty Co. v. Lindsey, Tex. Civ.App., 66 S.W.2d 419, 421, writ dismissed; Gilmore v. Lumbermen's Reciprocal Ass'n, Tex.Com.App., 292 S.W. 204. Also see, Texas Employers' Ins. Ass'n v. Clark, Tex.Civ.App., 23 S.W.2d 405, 409, writ dismissed; Traders & General Ins. Co. v. Wyrick, Tex.Civ.App., 118 S.W.2d 923, no application for writ of error; Texas Indemnity Ins. Co. v. McNew, Tex.Civ. App., 90 S.W.2d 1115, writ dismissed; Casualty Reciprocal Exchange v. Dawson, Tex. Civ.App., 81 S.W.2d 284, writ granted and dismissed.

That which we have said with reference to the insurer's fifth, sixth and seventh propositions is applicable to and sufficiently disposes of the contentions presented by the insurer's eighth to fourteenth propositions, inclusive.

■ Special issue number 2 reads as follows: "Do you find from a preponderance of the evidence that A. C. Watson sustained a personal injury on or about the 13th day of May, 1937 in the manner alleged by him? Answer 'Yes' or 'No.' Answer: 'Yes.'" It was objected to, among other things, "because said issue refers to the allegations in plaintiff's petition, some of which allegations have not been proved * * *." We have recently considered the question of reference to the pleadings in the submission of an issue in National Indemnity Underwriters of America v. Bill Blevins, 129 S.W.2d 734 (decided May 5, 1939). Realizing the difficulties faced by a trial judge in so submitting special issues, in view of another trial, we call attention to the language of Chief Justice Conner in Hines v. Hodges, Tex.Civ.App., 238 S.W. 349, 351, writ refused, as follows: "It is insisted that there was error in the fifth paragraph of the court's charge, in that it referred the jury to the petition for the allegations of negligence. The contention is that the charge should have embodied the particular issues of negligence to be submitted, and not left the jury to roam at will amongst the allegations of the pleadings. It has been several times determined that such practice is objectionable. To so do may result in the submission to the jury of an issue in support of which there is no evidence or insufficient evidence. So that, undoubtedly, the better practice is for the charge of the court to distinctly submit the particular issues of negligence alleged, and which, in the judgment of the court, the evidence is sufficient to so authorize." Also see Estep v. Bratton, Tex.Civ.App., 298 S. W. 145, writ refused; Egan v. Egan, Tex. Civ.App., 235 S.W. 659, writ refused; Standard Acc. & Ind. Ins. Co. v. Cherry, Tex.Civ.App., 36 S.W.2d 807; Texas Indemnity Ins. Co. v. Pemberton, Tex.Civ. App., 9 S.W.2d 65.

We have considered all of appellant's propositions; other than as heretofore stated, we think reversible error is not shown.

The judgment is reversed and the cause remanded.

FUNDERBURK, J., dissents.

FUNDERBURK, Justice (dissenting).

The interpretation of the law declared in Texas Employers' Ins. Ass'n v. Guidry, 128 Tex. 433, 99 S.W.2d 900, and Jones v. Texas Emp. Ins. Ass'n, 128 Tex. 437, 99 S.W.2d 903, must, of course, be accepted by this court as a premise upon which the questions at issue are to be determined. Under those decisions, the different maximum periods during which the payment of weekly compensation is authorized are not 401 weeks, or any other of the specified number of weeks, but instead such a number of weeks in any particular case as the incapacity may be shown to exist *between the date of the incipiency of the injury and the expiration of the 401 weeks, or lesser number of weeks, specified as the maximum for the particular injury.* To state the same thing differently, the "401 weeks", or other specified number of weeks, as the maximum for which the payment of compensation is purportedly authorized by the law is actually but a part of the means, or data, by which the really authorized, ever varying, maximums are to be computed. This necessarily results from the holding, in effect, that, regardless of the nature, duration or time of beginning of the incapacity, the maximum period for which payment of compensation is authorized is limited in all events to so much of such actual duration of incapacity as is included between the time of the (incipiency of) injury, and the date of the expiration of the 401 weeks, or other number of weeks specified as the maximum period of authorized compensation. Only under one combination of facts may the maximum period of compensation be the number of weeks specified by the statute. That is: (a) where the incapacity results simultaneously with the injury, and (b) continues four weeks or longer. Vernon's Ann.Civ.St.1925, Art. 8306, § 6. If, for example, "total and permanent incapacity" results from an injury, but begins 301 weeks after the injury, the total maximum period of authorized compensation under said decisions is, not 401 weeks, but 100 weeks. If incapacity begins 390 weeks after the injury, then 11 weeks is the maximum period of compensation. If following an otherwise compensable injury, total incapacity results

therefrom, beginning 401 weeks after the date of the injury, the injury may properly be said to be noncompensable, since under the Guidry and Jones decisions no compensation whatever (by the payment of weekly wages) is authorized.

Under the premise thus fixed and established as binding upon this court, a material fact as relates both to pleading and evidence is the *time* of the beginning of the incapacity for which compensation is sought. Such fact is material (1) to the existence of a cause of action; and (2) to the statement, or allegation of a cause of action. Under the Workmen's Compensation Law (R.S.1925, Arts. 8306–8309, Vernon's Ann.Civ.St. arts. 8306–8309) no injury is material, unless it results in incapacity to labor. Under that law as interpreted in the Guidry and Jones decisions, no incapacity to labor is material unless it begins within 401 weeks (or other specified number of weeks) after the date of the injury which causes such incapacity. It, therefore, requires a combination of the facts of the existence of an incapacity with the fact of the time of its beginning (in relation to the date of the injury) to have any materiality either to the existence, or statement, of a cause of action. Plaintiff being by the law under the necessity of making in his pleadings "a statement * * * of the facts constituting the plaintiff's cause of action" (R.S.1925, Art. 1997), such "statement of facts" to be "in contradistinction to a statement of evidence, of legal conclusions, and of arguments" (Rule 2, District and County Court Rules, 142 S.W. XVII), was required to allege not merely the immaterial fact of an incapacity or the nature or duration of same resulting from an injury, but the material fact of an incapacity beginning at a given time less than 401 weeks after the date of the injury.

Plaintiff's petition in the instant case did not expressly allege the date of the beginning of incapacity. The petition was, therefore, insufficient to state a cause of action, unless the averment of such date (time) was implied. That this is so may readily be seen when it is considered that proof of total and permanent incapacity, absent any proof of the time of its beginning, would constitute no proof whatever of any cause of action. The time element being essential, it was necessary that it be pleaded, if not expressly, then impliedly.

Now, it is the writer's view that the statute (said Art. 8306, § 6) shows that it was contemplated by the Legislature in the enactment of said statute that generally incapacity would result simultaneously with the injury, and that the circumstance was regarded as exceptional when "incapacity does not follow at once after the infliction of the injury or within eight days thereof but does result subsequently." On a question of the sufficiency of pleading, in the absence of any averment showing the exceptional circumstance, the allegations of the fact and date of injury and fact of the resulting incapacity would imply that the incapacity began on the date of the injury. In such case, although the pleading would be sufficient, proof only of the exceptional circumstance would present a question of no evidence or insufficient evidence to support a judgment.

The real question arising upon the record before us is whether incapacity and the time of its beginning are two distinct issues, or whether two elements of a single issue. If two distinct issues, then the majority opinion is correct, but in that case plaintiff's pleading must be regarded as insufficient to state a cause of action. If two issues are really involved, then clearly only one was pleaded and no facts were alleged sufficient to imply the other. On the other hand, if the time of the beginning of the incapacity is but an element of an issue, the function of which element being to limit and give material definition to the scope of the issue, then it is believed, there being but one issue, it was submitted to the jury without objection, and found against appellant. Each issue necessary to a cause of action or particular ground of defense must be (1) established conclusively by the evidence, or (2) submitted to and found by the jury; failing which no judgment awarding recovery on such cause of action, or denying recovery based upon the particular ground of defense can, as against proper attack, be permitted to · stand. But an incorrectly stated issue has the same effect as a correct submission of the same issue in the absence of specific objection pointing out the incorrectness. Duff v. Roeser & Pendleton, Tex.Civ.App., 96 S.W.2d 682, and authorities cited. The court submitted as an issue the question of incapacity without the limiting and qualifying element of its time of commencement. There was, therefore, a submission of the proper issue, but in incorrect form or manner of statement. It should have been submitted like the issue of injury was submitted, with the qualifying element of time as a part thereof. The submission of the issue was not objected to upon that ground, and hence the error was waived. Since only pleaded issues can be properly submitted so that the verdict thereon may form effective support for a·judgment, the issue, as it was submitted and answered, in the absence of objection, amounts to a finding that at the time of the injury, the plaintiff suffered as the result thereof, total and permanent disability. The recitation in the judgment to the effect that the incapacity began a few weeks later may indicate a serious question of the existence, or sufficiency of, evidence to support the verdict upon the issue, but those are different questions, not discussed in the majority opinion, and not the basis of the judgment of this court. The verdict required the judgment for a few weeks more compensation than was awarded but only the appellee, of course, could complain of that, the error being to the advantage of appellant.

Because the questions involved in the above discussion are, under the decisions, the subject of the greatest confusion and contrariety of views, the writer, at the risk of becoming tedious, is inclined to pursue the discussion just a little further.

There seems to be no common understanding, even among lawyers and judges, as to the meaning of the word "issues" (singular issue) as employed in such provisions as that the judge "shall submit the issues of fact to the jury," R.S.1925, Art. 2184; that "special issues shall be submitted distinctly and separately," R.S.1925, Art. 2189, and that the judge "shall submit all the issues · made by the pleading and evidence." Art. 2190, Vernon's Ann.Civ. St. art. 2190. There should be no difference of opinion that "the issues of fact" required to be submitted to a jury are identical in subject matter with "the facts constituting the plaintiff's cause of action" and/or "the defendant's ground of defense", which said Art. 1997 requires to be stated by the pleadings. Upon that proposition, perhaps general agreement may be taken for granted. The divergence of views seems to arise as to the meaning of the word "facts", when used in the sense that "the facts" are to be alleged "constituting plaintiff's cause of action or the defendant's ground of defense." Some degree of definition of the word "facts"

was afforded by said rule 2, supra (established and promulgated under direct constitutional authority, by the Supreme Court, on October 8, 1892), by which there was excluded from the meaning of the term "evidence", "legal conclusions" and "arguments." The incompleteness of such definition was, however, recognized as shown by the further statement—part of the rule—that "facts are adequately represented by terms and modes of expression wrought out by long judicial experience, perpetuated in books of forms in law and equity, which, though not authoritatively requisite, may generally be adopted as safe guides in pleadings." Manifestly *evidence* in a sense consists of "facts", but clearly not in the sense that *facts* must be pleaded and submitted as issues. Evidentiary facts are expressly excluded by the rule above quoted. Similarly "conclusions of law" and "arguments" take the form of facts but they are likewise excluded by the same rule.

If all the "facts" required to be pleaded were required to be expressly stated, it is probable there would never have been such a universal lack of a common understanding as to what are issues to be submitted to a jury. But when the view was adopted by the courts, of which no criticism is here intended, that facts implied from facts alleged were, as regards the sufficiency of a pleading, the same as if they were expressly alleged, then the identity of issues (facts) alleged and issues to be submitted to the jury was not quite so readily apparent. Then followed a time when the courts in practical effect refused to enforce the law requiring the pleading of facts to be "in legal and logical form." This resulted from holding that errors in overruling special exceptions were harmless, thus rendering unavailable, the only means by which the law could be enforced. Many decisions held, in effect, that omitted facts were supplied by reasonable intendment, the only intendment, however, not appearing otherwise than by the averment of purely evidentiary facts or of legal conclusions. It is, therefore, not to be wondered at that by the time the submission of causes upon special issues became the general rule of practice instead of the comparatively rare exception, there was such confusion in the minds of judges and lawyers regarding the real nature of issues required to be submitted to juries as to result, as it has, in rendering "confusion worse confounded."

One of the results of such confusion was the preposterous doctrine of the Rowe case, Colorado & S. R. Co. v. Rowe, Tex. Com.App., 238 S.W. 908. (See Minority Opinion, Williams v. Safety Casualty Co., Tex.Civ.App., 97 S.W.2d 729, and note to Wright v. McCoy, Tex.Civ.App., 110 S.W. 2d 223). While at first a result of the scrambled notions as to issues, it, in turn, became perhaps the most fruitful cause of further confusion. Without some general common understanding of the meaning of an issue, there can, of course, be no intelligent or generally understandable discussion of such subjects as the combination of two or more issues in a submission of same as one issue, or the submission as separate issues of two or more elements of a single issue. It is but natural that the distinction between merely evidentiary facts and the conclusions of fact (issues) of which the evidentiary facts are the necessary support, and between the factual elements of an issue and the issue itself, should be lost sight of.

One of the natural results of the uncertainty of what constitutes an issue to be submitted, is the lack of any general common understanding of when a party must object to the proposed submission of an issue and when instead he must request the submission of a proper issue. Harris v. Thornton's Dept. Store, Tex.Civ.App., 94 S.W.2d 849.

The failure of Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.2d 1084, to clarify the questions therein discussed was (now looking backward) patently due to the confusion of ideas regarding what constitutes issues to be submitted to juries. Issues in the proper sense (that is, in the sense of facts required to be alleged as constituting plaintiff's cause of action or defendant's ground of defense) which, when supported by evidence, are required to be submitted to the jury are not susceptible to the classification suggested in that opinion as many later cases necessarily in effect so hold. The meaning of "issues" was confused with "causes of action" as indicated by the statement that a particular provision of Art. 2190 does not apply "to *issues* in the case which are independent *causes of action.*" (Italics ours). There was a like confusion of *issues* with *grounds of recovery or defense* as shown by the statement regarding the same provision that it did not apply to "*issues* in the case which are * * * controlling and *independent grounds of recovery,* or *independent*

*grounds of defense."* (Italics ours). After thus describing "issues" to which the statutory provision *did not* apply, it was then said that it would apply "only to such omitted issues as are in accord with, and supplemental or incidental to, and which support, the issues of fact which ·were submitted and found by the jury." That language, it is respectively submitted, cannot intelligently be applied to an issue in the true sense, but only to some such conception of an issue as an evidentiary fact or fact element of an issue. There is no such thing as an issue in the true sense of the word, of which it can be truly said when its submission has been omitted that it is "in accord with, and supplemental or incidental to, and which support [s], the issues of fact which were submitted and found by the jury."

The issues tendered by the allegation of a cause of action are the essential elements of that cause of action. One such issue is just as independent and just as essential as any of the others. No one of such issues can be "merely supplemental or incidental to" or "merely support" other issues. No issue in the true sense is ever dependent for its materiality upon a particular finding of any other issue. The meaning of the decision in Ormsby v. Ratcliffe, supra, in the particulars named has long been a real mystery. The explanation, aided somewhat by subsequent decisions, is now believed to be that no distinction was recognized between such very widely diverse things as the several elements of an issue and the issue itself; grounds of recovery or defense, and the several issues constituting the elements of such grounds. The most reasonable explanation of Ormsby v. Ratcliffe, supra, seems to the writer to be that the court observing no distinction between the fact elements constituting an issue and the issue itself, or between an issue and the evidentiary facts necessary to support an issue intended by the language above quoted to express the view that issues (real issues as above discussed) are independent and when not submitted, nor their submission requested, are waived as support for the judgment; but that "issues" (changing the sense and) meaning the elements of an issue or the evidentiary facts necessary to support an issue (in the true sense) when one or more are submitted the others will be presumed, if supported by evidence, to have been found so as to support the judgment.

There was never any necessity, however, for such a question to arise or be discussed. If only one or more (less than all) elements of an issue is, or are, proposed to be submitted as an issue or issues, it is necessary for the adverse party in order to avoid becoming bound by such manner of submission, to object and thereby point out the improper or incomplete statement of the issue. The court may submit the several elements of an issue as separate issues or the evidentiary facts required to establish the issue as in themselves issues or may combine in one two or more real issues; and, provided it appears there is an attempted submission of the real issues, and there be no objection to the submission in the particular form or manner, the verdict will be just as effective as if the true issues were properly submitted.

In the instant case the court submitted as an issue the fact of incapacity. There should have been combined with that fact the element implied in the pleadings that such capacity began with the date of the injury. There was no objection pointing out the fault in the submission of the issue which quite certainly the court attempted to submit. The verdict upon the issue should have the same effect, as though it were a finding that the incapacity began at the date the injury was received.